COOPER v. NEWSOM. (No. 1669.)

(Court of Civil Appeals of Texas. Amarillo. Oct. 13, 1920.)

1. Courts ⊚=104—Court of Civil Appeals not required to pass on all assignments specifically.

Where most of appellant's assignments presented questions of fact, and where the evidence supported the trial court's findings, and the findings in turn supported the judgment, it was sufficient for the Court of Civil Appeals to discuss merely those assignments which did not raise issues of fact; it being unnecessary for the court to pass on the several assignments specifically, notwithstanding Vernon's Sayles' Ann. Civ. St. 1914, arts. 1636, 1638, 1639.

2. Brokers ⊚=86(5)—Evidence held to show that broker found willing purchaser.

In real estate broker's action for commission, evidence held to sustain finding that broker found a purchaser ready, willing, and able to purchase on the terms authorized.

3. Brokers ⊚=86(1)—Evidence held to show that owner ratified contract with purchaser.

In real estate broker's action for commission, where defense was that the contract with purchaser entered into by broker was unauthorized, evidence held to prove that owner ratified such contract.

4. Brokers ⊚=57(2)—Entitled to commission on contract slightly different from that authorized.

Where owner made contract with purchaser procured by broker on slightly different terms than those specified in contract with broker, but thereafter refused to consummate the transaction, broker was entitled to his commission.

5. Brokers ⊚=63(1)—Entitled to commission on owner's refusal to consummate deal.

Where owner notified broker that he would sell on stated terms, broker, having procured a purchaser ready, willing, and able to purchase on such terms, was entitled to commission, though owner declined to consummate the deal.

6. Appeal and error ⊚=931(3) — Facts presumed found supporting judgment, in absence of finding.

Where there was no express finding by court on particular issue of fact, and none was requested, appellate court must presume that lower court found the facts, so as to support the judgment.

7. Brokers ⊚=85(1)—Contract procured held admissible in action for commission.

In broker's action for commission, where it was claimed that contract broker made with purchaser was unauthorized, proof that such contract was ratified made the contract admissible in evidence against owner for all purposes.

8. Appeal and error ⊚=1054(1) — Testimony as to conversation in broker's action for commission held harmless.

In broker's action for commission, in which it was claimed that owner refused to consummate transaction with purchaser procured by broker, the admission of testimony as to conversation between purchaser and owner's attorney, objected to as irrelevant and hearsay, held harmless; trial being before the court.

9. Brokers ⊚=85(6) — Purchaser's statement to owner that he was ready to perform admissible.

In real estate broker's action for commission, where it was claimed that broker procured purchaser ready, willing, and able to perform contract, but that owner declined to consummate transaction after having ratified the contract made with purchaser by broker, testimony as to statement by purchaser to owner's attorney that purchaser was ready and willing to carry out the contract held admissible.

10. Trial ⊚=85—General objection to evidence good in part insufficient.

Where objection to testimony did not designate a particular part as inadmissible, and where a portion thereof was admissible, the admission of the whole testimony was not error.

11. Evidence ⊚=121(9)—What was said and done on service of notice of refusal to perform contract admissible as res gestæ.

In real estate broker's action for commission on owner's refusal to consummate transaction with purchaser procured by broker, testimony as to what was said and done when written notice of such refusal was served on purchaser by owner's attorney held admissible as part of res gestæ.

12. Brokers ⊚=86(1)—Evidence held to show that incumbrance was not due until certain date.

In real estate broker's action for commission following owner's refusal to perform contract because of purchaser's refusal to assume payments of incumbrance, as to which no mention was made in terms on which broker was authorized to make contract, evidence held to support finding that incumbrance was not due until certain date.

13. Appeal and error ⊚=1071(3) — Finding based on insufficient evidence held harmless.

In real estate broker's action for commission, assignment that finding that incumbrance against property was not payable until certain date was unsupported by evidence was immaterial, in view of purchaser's agreement to assume such indebtedness on terms to which owner agreed.

⊚=For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**14. Damages** ⬷**45 — Unnecessary expenses of trip not recoverable in owner's cross-action against broker.**

In real estate broker's action for commission, where defendant interposed cross-action for damages caused by broker's breach of trust, owner could not recover expenses of making trip in order to close contract, where the deal could have been closed without making trip.

Appeal from District Court, Carson County; W. R. Ewing, Judge.

Action by E. Newsom against E. Cooper. Judgment for plaintiff, and defendant appeals. Affirmed.

C. E. Gustavus, of Amarillo, for appellant. S. E. Fish, of Amarillo, and J. Sid O'Keefe, of Panhandle, for appellee.

HALL, J. By his motion for rehearing appellant insists that we failed to file conclusions of fact and law upon several assignments and to decide the several issues presented by the assignments, as required by V. S. C. S. arts. 1636, 1638, and 1639. In the original opinion we adopted the findings of the trial court and made them the findings of this court. Prompted by a desire to shorten the opinion, we did not copy the findings in full. We have serious doubts whether this court is required to do so, where the trial court has filed written findings and they are a part of the record. To save any question, and in deference to appellant's motion, we will set out the findings in this opinion verbatim.

[1] There is no rule requiring the Courts of Civil Appeals to pass upon the several assignments specifically. Practically all of appellant's assignments present questions of fact. The evidence supports the trial court's findings, and they in turn support the judgment. In the original opinion we discussed the assignments which did not raise issues of fact, and we thought then, and still think, that this was a sufficient disposition of the issues presented in the brief.. Except for the fact that we consider it a useless waste of time and space, we have no objection to·discussing the assignments in detail, and while neither the rules nor exact justice require us to do so, we have decided to comply with appellant's request, and file, as usual, an opinion in full.

The suit was brought by appellee, Newsom, a real estate broker, to recover the sum of $1,500, alleged to be due him as commissions. He alleged that he was engaged in the real estate business; that about January 16, 1919, appellant listed with him 9 sections of land in Hutchinson and Carson counties for sale at $12.50 per acre, $10,000 of the consideration to be paid in cash, and deferred payments of $10,000 per year, at 6 per cent. interest; that on February 8, 1919, he procured J. D. Head, of Amarillo, as a purchaser, who was ready, willing, and able to purchase upon appellant's terms; that appellant was advised of the sale by wire, and that he confirmed the sale; that a written contract was executed, and a deposit of $1,000 was made; that subsequently appellant came to Amarillo, read the contract, and ratified it, but afterward, about February 28th, left Amarillo and refused to consummate the trade.

Appellee pleads, in the alternative: That if the contract made was not binding that on February 17th he found J. D. Head as a purchaser, who was willing to pay $2,000 cash, and assume an incumbrance of $8,000 against the land, and pay the remainder in installments of $10,000 each year, the papers to be placed in the First National Bank until the incumbrance was paid. That Head was ready, willing, and able to carry out this deal, but appellant failed and refused to do so, or pay the commissions that had been earned by appellee. Appellee attached to his pleadings, as an exhibit, a contract made by him as appellant's agent with Head for the sale of the land. That appellee agreed to pay him the $1,500 commission. That the $1,000 was deposited in the bank upon request of appellant, and that the bank, at the request of appellant, notified him that the $1,000 and the contract had been so deposited. He alleges his authority to make the contract, the subsequent inspection and ratification of the same by appellant, and his promise to convey the land in accordance with its terms. That after appellant arrived in Amarillo, and on or about the 17th day of February, 1919, appellee learned that there was an incumbrance against the land for $8,000, and that'appellant could· not pay it off until June 1, 1919, whereupon appellant and Head made an agreement whereby Head was to assume the $8,000 indebtedness and pay appellant $2,000 in cash, appellant to execute his deed conveying the land, and place the same in the First National Bank of Amarillo, with the further agreement that, if Head did not pay off the $8,000 indebtedness at its maturity, then the bank was to be authorized to return the deed to appellant, together with the $2,000 cash, as liquidated damages. That Head was and has always been ready, willing, and able to carry out this contract, but appellant breached and violated the same. That about the 20th day of February appellant stated he would order his abstracts and submit the same to Head for approval, but later refused to permit Head's attorney to examine the same, and further refused to comply with the terms of the contract.

Appellant answered by general demurrer, special exceptions, general denial, and specially denied that he ever authorized appellee to make any sale of his lands, except for a present cash payment of $10,000, and the re-

⬷For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

mainder in annual installments of $10,000. He denied the authority of appellee to execute the contract of sale, and alleged that it had never been approved or ratified by him. It is further alleged that appellee and Head entered into a fraudulent scheme, agreement, and conspiracy to tie up his lands until May 1, 1919, and speculate on the oil and gas lease value thereof, and that the $1,000 was deposited by appellee. Wherefore appellee had forfeited all right to claim commissions by his infidelity and breach of trust. By cross-action he pleaded that he resided in Montana, and was induced by appellee, by telegram sent to him, stating that his lands had been sold in accordance with the terms of appellant's letter, to come to Amarillo to close the deal; that appellee's actions and conduct were false, fraudulent, and deceitful, and caused appellant to lose his time and incur heavy expenses, which were itemized, in the total sum of $603.75, for which he prayed judgment.

A trial before the court without a jury resulted in a judgment against appellant for $1,500, with 6 per cent. interest from February 28, 1919, from which this appeal is prosecuted.

The trial judge filed findings of fact, which we adopt as the findings of this court, and which, omitting the formal parts, are as follows:

"First, I find that the plaintiff, E. Newsom, is a resident of Potter county, Texas, and that the defendant, E. Cooper, is a nonresident of the state of Texas, but resides at Great Falls, in the state of Montana.

"Second. I find that on the 16th day of January, 1919, and prior thereto the defendant, E. Cooper, was and is now the owner of certain sections of land, situated in Carson and Hutchinson counties, described as follows: Sections 1, 4, and 5, block 9, I. & G. N. R. R. Co., in Carson county, Texas, and sections 2, 3, 8, 9, 10, and 6, in block 9, in Hutchinson and Carson counties, Texas.

"Third. I find that the plaintiff, E. Newsom, was engaged in the real estate business, selling lands and properties on commission, in the Panhandle, for others, and that a short time prior to January 16, 1919, he learned that the defendant was desirous of selling his lands above described, and that the plaintiff wrote the defendant and proposed a trade of a stock of goods for said nine sections of land.

"Fourth. I further find that on the 16th day of January, 1919, the defendant, with reference to said land, and in reply to plaintiff's letter, wrote to the plaintiff at Amarillo, Texas, as follows:

" 'Great Falls, Montana, January 16, 1919.

" 'Mr. E. Newsome, Amarillo, Texas—Dear Sir: We are in receipt of your favor putting up the stock of merchandise in exchange for our nine sections of land. We beg to inform you that we could not handle this stock of goods, and it would give us a lot of trouble while the land gives us no trouble at all. We will sell the land at the price you put on it, viz. $12.50 per acre. Will take $10,000 cash down, with $10,000 per year, at 6 per cent. interest, and give you a commission of $1,500 to make the trade. Now, if this land is sold, it must be done so this winter, as we shall tie it up again soon for another year. You spoke of Mr. Harrison buying some land at $10 per acre east of ours. Now we think this must be a mistake, for we know that $10 per acre would never buy the land east of ours. Is Mr. Harrison the gentleman who was renting our land? Kindly let us hear from you, if you can handle this proposition.

" 'Yours truly, E. Cooper.'

"Fifth. I find that on the 8th day of February, 1919, plaintiff sold said land to one J. D. Head, and with reference to said sale telegraphed the defendant as follows:

" 'Amarillo, Texas, Feb. 8, 1919.

" 'E. Cooper & Son, Great Falls, Montana. Have sold land as your letter, $10,000 cash, balance one to six years, six per cent. Make deed to J. D. Head of Potter county, Texas. Send deed and abstract to Amarillo Bank & Trust Company. I will have abstract brought down. Answer and instruct bank deduct $1,500.00 for me. E. Newsom.'

"And thereafter, to wit, on the 8th day of February, 1919, the defendant telegraphed the plaintiff as follows:

" 'Great Falls, Montana, Feb. 8, 1919.

" 'Mr. E. Newsom, Amarillo, Texas. Will accept your sale of $12.50 per acre, nine sections of land, $10,000 down, balance deferred payments six per cent. Have Mr. Head deposit one thousand dollars to my credit on deal in bank and have bank wire me, acknowledging deposit, then will start down with deed, abstract, close deal up. E. Cooper.'

"And thereafter, on the 8th day of February, 1919, with reference to said sale, the defendant wrote plaintiff as follows:

" 'Great Falls, Montana, February 8, 1919.

" 'Mr. E. Newsom, Amarillo, Texas—Dear Sir: We are just in receipt of your wire that you had sold our nine sections of land, as per our favor of January 16th. We wired you to-night that would confirm the sale by requesting you to have Mr. Head deposit one thousand dollars in the Amarillo Bank & Trust Company, to our credit on the sale, then the bank should wire us, acknowledging receipt of this deposit to our credit, then we would come down and bring the deed, executed by myself and wife, also abstract, which I have, showing good title to this land, and besides we have a court decree showing this a perfect title. So as soon as we get a wire from the bank that this money is deposited we will start down and close the thing up.

" 'Yours truly, E. Cooper.'

"That thereafter, on the 10th day of February, 1919, a night letter was received by plaintiff from the defendant, E. Cooper, as follows:

" 'Great Falls, Montana, February 10, 1919.

" 'Mr. E. Newsom, Amarillo, Texas. Notify Mr. Head when he deposits one thousand dollars to my credit that possession will be given on the ranch May 1, 1919. Have bank wire

me advising when deposit is made, and will start to Amarillo at once.          E. Cooper.'

"Sixth. And I further find, upon receipt of the last telegram on the 10th of February, 1919, a written contract of sale of said nine sections of land was prepared and executed between E. Cooper, by his agent, E. Newsom, as party of the first part, and J. D. Head, party of the second part; that by the terms of the contract the $1,000 was deposited in the Amarillo Bank & Trust Company, of Amarillo, Texas, to the credit of E. Cooper, $9,000 in cash to be paid on or before May 1, 1919. The said J. D. Head was to execute six equal vendor's lien notes, aggregating the sum of $62,000, payable to E. Cooper, at Amarillo, Texas, one, two, three, four, five, and six years, respectively, after May 1, 1919, with 6 per cent. interest from May 1, 1919, interest payable annually, said $1,000 to constitute a payment on the land, and the bank was to pay same on the check of E. Cooper, after this title was approved by the purchaser. The party of the first part was to furnish an abstract of title, showing in himself a good and merchantable title, free and clear of all incumbrances. same to be examined by attorney for party of the second part. First party was to furnish said abstract on or before 30 days from date of contract, and second party was to have same examined within a reasonable time, not to exceed 15 days, and, in the event any objections were found, party of the first part was to have reasonable time, not to exceed 15 days, in which to cure said objections, and, if the title was then found satisfactory, party of the first part should execute his deed and deliver same to party of the second part, on the payment to party of the first part of $9,000 and the $1,000 deposited in the bank and the execution and delivery of the six notes. The contract further provided that, if the title was not found satisfactory, the $1,000 that was deposited in the bank should be returned to party of the second part and the contract would be at an end. That upon execution of this contract, it, together with the $1,000, was placed in the Amarillo Bank & Trust Company. That thereafter, to wit, on the 11th day of February, 1919, the plaintiff sent the following telegram:

"'Amarillo, Texas, February 11, 1919.

"'Mr. E. Cooper, Great Falls, Montana. Trade is closed. Money in bank according to your telegram. Bank is also wiring you. Copy of contract is being mailed you.

"'E. Newsom.'

"That also on the said 11th day of February, the bank sent the following telegram to the defendant:

"'Amarillo, Texas, February 11, 1919.

"'Mr. E. Cooper, Great Falls, Montana. One thousand dollars has been deposited through E. Newsom, with us in escrow, to abide said contract on lands in block nine, Hutchinson and Carson counties. Said contract by Newsom as your agent, made with Head.          Amarillo Bank & Trust Co.'

"And that thereafter, to wit, on the 11th day of February, 1919, the defendant telegraphed the plaintiff as follows:

"'Great Falls. Montana, February 11, 1919.

"'Mr. E. Newsom, Amarillo, Texas. I start on February 12th. Will arrive about Friday with abstract and deed. Have your man ready to make mortgage and pay balance of first payment.          E. Cooper.'

"Seventh. I further find that the defendant reached Amarillo a few days after the telegram of the 12th; that he asked permission of plaintiff to reserve the mineral rights on the land. This was not agreed to, and then defendant expressed some dissatisfaction with the written contract, if the deal could not be closed until May 1, 1919; but the plaintiff told him that the deal could be closed and the money paid as soon as the abstract was approved. That some four days after the defendant reached Amarillo he and the purchaser, J. D. Head, had a meeting in the Amarillo Hotel, and it was at this meeting, for the first time, that purchaser learned that there was an $8,000 loan against said land; both said Head and plaintiff had supposed that the land was clear. That this loan matured on June 1, 1919. That at this meeting J. D. Head told defendant that he wanted the land and was prepared to pay for it, and if the loan could not be taken up before maturity J. D. Head proposed to pay the defendant the $2,000 cash and assume the $8,000 loan and execute the notes for the balance, as provided in the contract, or he would pay the defendant $2,000 cash if the defendant would place the deed and the $2,000 in the First National Bank of Amarillo, and in the event the said Head did not take up the said $8,000 loan, at its maturity, said bank should return the deed to defendant, with the $2,000 as a forfeit. That this was agreed to by the defendant and the said J. D. Head, but later the defendant refused to do this; or the said J. D. Head proposed that the defendant clear the land and he would pay $10,000 cash and execute the six notes.

"Eighth. I further find that the defendant ordered his abstracts of title brought down to date; that about the 26th or 27th day of February, he wrote letters to J. Sid O'Keefe, at Panhandle, Texas, urging him to hasten the abstracts, and also 'phoned the said O'Keefe, and told him in the conversation that he had sold his land and was wanting to close the deal.

"Ninth. I further find that about the 28th day of February the defendant brought the abstract to the office of plaintiffs and handed it to the said J. D. Head; the said Head looked through it; that defendant then stated that he wanted his attorney to look over the title first, and immediately left the office with said abstract and did not return.

"Tenth. I further find that up to the time the defendant left Amarillo the plaintiff and the said Head were insisting on closing the trade and demanding that defendant furnish Head a title, and that said Head would pay him the $10,000 cash and execute the notes as soon as the title was approved, but that the defendant, toward the close of his stay in Amarillo, demanded that Head pay the $10,000 cash as a condition precedent to his clearing the title, which could not be done until June 1, 1919.

"Eleventh. I further find that on February 8, 1919, and at all times since, up to and including the present, the said J. D. Head was,

has been, and is ready, willing, and able to buy said land upon the terms proposed by the defendant's letters and telegrams, as well as the written contract, or upon the terms and conditions of any of the agreements or contracts subsequently made between the said Head and defendant, and that the said J. D. Head was only prevented from buying the land by the defendant, who refused to sell the land to J. D. Head.

"Twelfth. I further find that the defendant, just prior to his leaving Amarillo, went with a witness to the Amarillo Bank & Trust Company, and demanded the payment to him of the $1,000 that was placed in escrow, but the bank refused to pay same to him until conditions of. contract had been met; that the defendant, on or about the 1st day of March, 1919, left Amarillo, and thereafter said Head was notified in writing, delivered by defendant's attorney; that the defendant was repudiating the contract and refusing to consummate the sale of the land, and that the said Head in the conversation told defendant's attorney that he was ready to pay for and take the land, just as soon as defendant would make him a good title.

"Thirteenth. I further find that the plaintiff found a purchaser in the person of J. D. Head, ready, willing, and able to buy defendant's land, upon the terms and conditions specified by defendant in his listing of the land with plaintiff, but said sale was not made because of defendant's refusal to consummate it."

Appellant's first assignment of error is:

"The judgment of the court is contrary to the law and evidence in this: Defendant only authorized a present sale of and cash payment of $10,000, and did not authorize or approve the contract attempted to be made, and J. D. Head, the alleged purchaser, was never ready, willing, and able to purchase upon defendant's terms."

[2] The first proposition urged under this assignment is:

"Appellee did not find a purchaser ready, willing, and able to purchase appellant's lands upon the terms authorized, and judgment should have been in appellant's favor."

The record does not sustain this proposition. Head testified that he had been and was ready to close the trade; that he had informed both appellant and his attorney of that fact. His readiness to close the deal was known to appellee, who says he informed appellant, and appellant himself testified that Mr. Head came to his hotel, told him he had bought the land in good faith, and wanted it. It further appears that, after appellant had informed Head that there was an incumbrance against the land of $8,000, Head proposed to pay $2,000 cash and assume the $8,000 debt. In his letter of February 8th appellant stated that he had an abstract showing a good title, and that there was a decree of court showing a perfect title. This statement proved to be untrue. He said nothing about the incumbrance until after his arrival in Amarillo. The evidence abundantly shows that Head was at all times ready, willing, and able to take it, before he

learned of the incumbrance, and according to his testimony he proposed to assume the amount of the incumbrance and pay the difference, $2,000, in cash, to which appellant assented. This was all appellant had a right to demand. He had misrepresented the condition of his title, and Head's undertaking to pay $10,000 cash was prior to the time he learned of the falsity of appellant's statements concerning the condition of his title. It appears from Newsom's testimony that, after appellant arrived in Denver, he learned of the oil excitement in Amarillo, and upon his arrival wanted to reserve the mineral rights in the land. While Cooper's testimony upon these issues contradicts the testimony of appellee and his witnesses to some extent, the trial judge evidently did not believe his story.

[3] The second proposition is:

"The purported contract by appellant with J. D. Head, by which it was sought to bind appellant, was wholly unauthorized, and was repudiated by appellant."

It may be that the facts do not bring this case within the rule announced by our Supreme Court in Colvin v. Blanchard, 101 Tex. 231, 106 S. W. 323, and that Newsom was not authorized to enter into a written contract with Head in the exact terms of the one which they executed, though we entertain some doubt upon that point. In any event, however, the evidence is sufficient to sustain the court's finding that appellant ratified the contract after he came to Amarillo and read it. The evidence shows that he went to the bank, read the contract over carefully for some time, and said:

"I will have to send over to Panhandle and get an abstract of this thing"

—and stated then and there that the contract was all right. He subsequently wrote and 'phoned to abstracters at Panhandle and had his abstract of title brought down. It was after his inspection of the contract when he said he would like to retain an eighth of the oil, but since the trade had gone so far he would let it go. The abstracter at Panhandle testified that the appellant wrote him to hasten the preparation of the abstracts, and 'phoned him that he had sold the land, and was waiting on the abstract to be brought down to date. After his receipt of the abstract he took it to Head's office for inspection, and subsequently demanded the $1,000, which had been placed in the bank, in accordance with the terms of the written contract, and further insisted several times that Head pay the $10,000 in cash as therein provided. Wilson v. Burch, 162 S. W. 1018.

[4] The third proposition is:

"The fact that J. D. Head, after learning that appellant repudiated and refused to be bound by the written contract, may have offered or was willing to purchase upon appellant's terms, did not entitle appellee to recover."

This proposition assumes that appellant repudiated the contract, when, as shown above, he had ratified it; but, if we admit that he did not affirm it, there is evidence showing that he afterwards agreed to sell to Head upon slightly different terms, although he afterwards refused to do so. This would entitle appellee to recover his commissions. 9 C. J. "Brokers," pars. 89, 91, and authorities cited.

[5] Appellant's second assignment of error is:

"The judgment of the court is contrary to the law and evidence, bcause defendant, in any event, only agreed to pay a commission of $1,-500 for making a trade upon specified terms, and such commission could accrue only when such trade was consummated, and there was no listing of defendant's land to find a purchaser for such land, and, no. trade ever having been consummated, no commission ever accrued to plaintiff."

This is submitted as a proposition. It is neither sound as a proposition of law, nor does it correctly reflect the facts of the record. The terms of the sale had been fully and fairly stated to appellant, and he had notified appellee that he would sell upon the terms stated, and agreed to pay $1,500 commissions to make the trade. If appellee procured a purchaser ready, willing, and able to purchase upon such terms, his right to compensation was complete when appellant declined to consummate the deal. The written contract made by appellee with Head, and which appellant ratified, bound him to convey the land upon compliance by Head with its terms. His subsequent refusal to deliver the deed, even though it had not been shown that the contract was by agreement of the parties modified, would entitle the appellee to recover. Conkling v. Krakauer, 70 Tex. 735, 11 S. W. 117.

[6] The third assignment, submitted as a proposition is:

"The judgment of the court is contrary to the law and evidence, because the plaintiff, in assuming to act as agent of defendant, was guilty of such disloyalty and infidelity to the interests of defendant as to forfeit and deprive him of any rights to commission, such disloyalty and infidelity consisting of a disregard of defendant's directions and requests, and an attempt to sell said lands to his partner and intimate associate, and having a personal interest in such transaction, and the failure to inform defendant of the prevailing conditions and values of his lands, and rendering personal assistance to the purchaser, J. D. Head, all of which was detrimental to the defendant."

There is no express finding by the court upon this issue, and none was requested, and we must presume that the court found the facts so as to support the judgment. Aside from this, there is no positive proof of appellee's disloyalty to appellant. There are some circumstances from which inferences equally consistent with guilt or innocence might have been drawn.

[7] The fourth assignment is:

"The court erred in admitting in evidence, over the objections of defendant, the purported contract of sale of. defendant's lands to J. D. Head, dated February 10, 1919, made by plaintiff as agent for defendant."

The following proposition is urged under this assignment:

"The purported contract with J. D. Head was wholly unauthorized by appellant's letters or telegrams and same should not have been admitted in evidence."

It is a sufficient disposition of this proposition and assignment to say that it was shown, to the satisfaction of the trial court and of this court, that appellant, with full knowledge of the terms of the contract, ratified it after his arrival in Amarillo. This made it admissible against him for all purposes.

By the fifth assignment it is insisted that the court erred in permitting the plaintiff to prove a conversation which Head had with appellant's attorney at the time the latter delivered to Head the written notice from defendant repudiating the contract of sale. It appears from the bill of exceptions that appellant's attorney served a written notice upon J. D. Head and the Amarillo Bank & Trust Company that he repudiated the contract of sale, reciting that appellant would not be bound by it, nor would he comply with its terms, and authorizing the bank to return to Head the $1,000 deposited therein, with the copy of the contract. When appellant's attorney delivered the notice, it appears from the bill of exceptions that Head made certain statements, which we number as follows:

"(1) That he bought the land in good faith; (2) that he understood the old man was going to bring the abstract back to him; (3) that he meant to sue the defendant if he [defendant] did not perform the contract; (4) that Mr. Jackson drew the contract; (5) that he [Head] was ready and willing to carry the contract out."

[8-10] None of this testimony was objected to upon the ground that it was self-serving. As shown by the bill, it was objected to because it was irrelevant, immaterial, not binding upon the defendant, and was hearsay. This being a trial before the court, we see nothing in the evidence which would probably prejudice or influence the court's judgment. The testimony was objected to as a whole. A part of it we think is unquestionably admissible. The negotiations were pending at the time the notice was delivered by appellant's attorney and representative, and we know of no objection which could be

urged to the statement by Head to such attorney that he was ready and willing to carry out the contract. He had made the same assertion a number of times to appellant. This part of the conversation being clearly admissible, and appellant's objections failing to designate any part of the conversation as inadmissible, there was no error in admitting it all. The first fact stated by the witness to appellant's attorney is that witness had bought the land in good faith. The record shows that he had previously told appellant the same thing in the hotel. His statement that he thought the old man was going to bring the abstract back to him may have been irrelevant and immaterial; but appellant has failed to show wherein it could be prejudicial, even in a trial before a jury. Reference to the record shows that, at the time appellant took the abstract from the witness, it was with the intention of returning it to him. The statement that he meant to sue defendant, if he did not perform the contract, was the statement of an intention, which he afterward carried out, and it is not apparent wherein the admission of that evidence is prejudicial.

[11] We think it was an irrelevant and immaterial statement that Mr. Jackson drew up the contract but no prejudice is shown. It occurs to us that, under the rule of res gestæ, all that was said and done, when the written notice was delivered by appellant's counsel to Head, should have been admitted, unless subject to some objection not urged at the time.

[12, 13] Appellant's sixth assignment of error is the court's finding of fact, that defendant's title was incumbered by a loan that could not be cleared off until June 1, 1919, is contrary to and unsupported by the evidence, because the testimony was uncontroverted that said indebtedness was payable on or before, and that defendant was able to pay same at any time, and would have done so. This assignment, submitted as a proposition, is not sustained by the record. Appellee testified that when appellant brought the abstract to J. D. Head he said:

"There is an $8,000 mortgage against it, and some interest on it, that is not due until the 1st day of June."

On cross-examination appellee testified that on one occasion appellant stated that the $8,000 could be paid on or before, by paying the interest up to June, but it nowhere appears that this statement was ever communicated to Head. Head testified that appellant told him that the $8,000 was due on June 1st, and denied that appellant ever told him that it was payable on or before, and could be taken up at any time. We think better evidence of the time of the maturity of this obligation could have been produced by appellant, and his failure to present to the court the obligation itself, or the record thereof, places him in an unfavorable attitude to assign error upon the court's finding in regard to that fact.

The matter is wholly immaterial, however, in view of the fact that Head agreed to assume the $8,000 and pay appellant $2,000 in cash, to which appellant first agreed, and subsequently declined to act upon. Head showed a willingness to close the deal upon almost any terms, and at one time stated he was willing to make the $10,000 cash payment, if appellant would at once discharge the indebtedness against the land. It does not appear that appellant was able to pay off this indebtedness at any time, but his statement was that, if he was back at his home, he could borrow the money in 15 minutes.

The seventh and eighth assignments have been disposed of by what we have heretofore said.

[14] Appellant complains in the ninth assignment of the court's refusal to render a judgment in his favor upon his cross-action, for the sum of $603.75, for loss of time and expenses in making a trip to Amarillo. It is difficult to see upon what ground any such judgment could have been rendered. Appellant shows no necessity for having made the trip. The deal could have been closed through the bank and his agent. Neither Head nor Newsom requested him to come. He voluntarily made the trip, and shows no right to recover, either upon tort or contract, expressed or implied.

The request for additional findings is granted, and the application in all things else overruled.

There are no errors in the record requiring a reversal, and the judgment is affirmed.

⬯For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes