### LINCOLN NAT. LIFE INS. CO. v. ANDERSON.
### No. 1471.

Court of Civil Appeals of Texas. Waco.
April 12, 1934.

Rehearing Denied May 24, 1934.

556

Leake, Henry & Young and Hawkins Golden, all of Dallas, for appellant.

John B. Poindexter, Jr., of Dallas, and T. Wesley Hook, of Alvarado, for appellee.

GALLAGHER, Chief Justice.

A statement of the facts out of which this suit arose will aid in a ready understanding of the issues involved. Appellee, Kin V. Anderson, on February 14, 1912, owned 214 acres of land in Johnson county and occupied the same as a home. Said land was incumbered with a vendor's lien in favor of one Metze for approximately $6,500. Metze indorsed and transferred the notes evidencing such indebtedness to the United States Bond & Mortgage Company. Appellee, on February 14, 1912, in renewal and extension of said indebtedness, executed and delivered to said Mortgage Company notes aggregating the sum of $6,500, the last of which was payable January 1, 1919. The obligation to pay interest on said loan was evidenced in part by coupons attached to said notes. Such coupons represented interest on the principal of the notes to which they were attached at the rate of 6 per cent. per annum, the first of which coupons was payable January 1, 1913. The obligation to pay further interest on said loan was evidenced by seven additional interest notes, payable one each year thereafter, beginning January 1, 1913, and amounting in the aggregate to $703.55. Said principal notes and the interest coupons thereto attached were secured by a first deed of trust on 214 acres of land in Johnson county, and the said seven additional interest notes were secured by a second deed of trust on the same land. By the terms of said deed of trust, the Mortgage Company was subrogated to all the rights of the holder of said notes transferred to it as hereinbefore stated. Each of said deeds of trust contained a provision for accelerating the maturity of the notes secured thereby, and said second deed of trust provided that upon such acceleration the whole sum of money secured thereby should become due and payable. According to the terms of such provision, in event of acceleration on January 1, 1913, appellee would have been required to pay 6 per cent. interest on the entire loan, in the sum of $342.25, as provided by coupons attached to the principal notes, and the further sum of $703.55, as provided by said separate interest notes, or a total of $1,045.80 for the use of the amount borrowed for one year. Such right of acceleration was, however, never exercised. Appellee paid all said interest coupons and separate interest notes and also paid $2,500 on the principal notes.

Appellee, on the 1st day of January, 1919, executed to the Dallas Trust & Savings Bank, a corporation, his promissory note in the sum of $4,000, due January 1, 1926, and bearing interest from date until maturity at the rate of 6 per cent. per annum. Said note was given in lieu and in extension of a balance due on the principal of the notes executed by appellee to the United States Bond & Mortgage Company and was secured by a first deed of trust on 180¾ acres of land out of the 214 acre tract upon which appellee had theretofore given deeds of trust to the United States Bond & Mortgage Company to secure the money borrowed from it as aforesaid. Appellee also, as a part of the same transaction, executed and delivered to the Dallas Trust & Savings Bank as additional interest on the indebtedness evidenced by said principal note, seven separate notes, bearing even date with said original note and due one each year thereafter, beginning January 1, 1920, for the sum of $70 each. Said notes were secured by a second deed of trust upon the same 180¾ acres of land. Each of said deeds of trust contained a provision for accelerating the maturity of the notes secured thereby, and said second deed of trust provided that upon such acceleration the whole sum of money secured thereby should become due and payable. According to the terms of such provision, in event of acceler-

ation at the end of the first year, appellee would have been required to pay 6 per cent. on the entire loan, in the sum of $240, and the further sum of $490 provided by said separate interest notes, or a total of $730 for the use of the amount so borrowed for one year. Such right of acceleration, however, was never exercised. Appellee paid all said interest charges and $800 on the principal.

Appellee, on the 10th day of April, 1925, executed to the Dallas Trust & Savings Bank aforesaid his promissory note in the sum of $4,200, due January 1, 1936, bearing interest from January 1, 1926, until maturity at the rate of 5½ per cent. per annum, payable annually. Said note was given in lieu and in extension of the balance due on the principal of the notes executed by appellee to said Dallas Trust & Savings Bank on January 1, 1919, as aforesaid, and in enlargement of the indebtedness in the sum of $1,000 additional. Said note was secured by a first deed of trust on the same 180¾ acres of land upon which appellee had theretofore given deeds of trust to secure his said series of notes dated January 1, 1919. Appellee also, as a part of the same transaction, executed and delivered to said Dallas Trust & Savings Bank, as additional interest on the indebtedness evidenced by said principal note, ten separate notes bearing even date with said original note, each for the sum of $42, the first of which became due January 1, 1927, and one annually thereafter. Said notes were secured by a second deed of trust on the same 180¾ acres of land. Each of said deeds of trust contained a provision for accelerated maturity of the notes secured thereby, and said second deed of trust provided that upon such acceleration the whole sum of money secured thereby should become due and payable. According to the terms of such provision, in event of acceleration on January 1, 1927, appellee would have been required to pay 5½ per cent. on the entire loan, in the sum of $231, and the further sum of $420, the aggregate of said separate interest notes, or a total of $651 for the use of the amount so borrowed for the year 1927. Appellee paid to said Dallas Trust & Savings Bank, or its assigns, all said annual interest charges to and including January 1, 1931.

The Dallas Trust & Savings Bank, on July 24, 1925, assigned to the Merchants' Life Insurance Company, a corporation, said $4,200 note, together with the lien securing the same. Said Merchants' Life Insurance Company, on the 8th day of January, 1929, assigned said last-described note and lien to appellant, the Lincoln National Life Insurance Company, a corporation. Appellee did not pay the stipulated installments of interest due January 1, 1932. Appellant accelerated the payment of said principal note under the authority contained in the deed of trust securing the same, and in pursuance of the power conferred thereby, advertised the land described therein for sale to satisfy such indebtedness.

Appellee, on the 3d day of June, 1932, instituted this suit in the district court against said United States Bond & Mortgage Company, Dallas Bank & Trust Company (formerly Dallas Trust & Savings Bank) and appellant, to restrain said sale; to establish that each of said three several series of notes executed by him as aforesaid constituted a transaction prohibited by the usury laws of this state; to establish the aggregate amount of usurious interest paid on all said series of notes; to require such interest applied in satisfaction of said principal note held by appellant; to cancel all unpaid interest notes in the hands of the other defendants; to declare appellant's note paid in full; and to cancel and remove as clouds upon his title the liens created by said six several deeds of trust as aforesaid. The court granted appellee's prayer for restraint of said sale pending the suit.

The defendants aforesaid other than appellant renounced their right, if any, to have a recovery on outstanding interest notes in their hands, surrendered the same for cancellation, and disclaimed any interest in the land described in said several deeds of trust.

Appellant pleaded that the action of appellee in executing and delivering the series of notes and deeds of trust securing the same dated January 1, 1919, estopped him from claiming that the first series of notes and deeds of trust securing the same involved usury, and that the action of appellee in executing and delivering the series of notes and deeds of trust securing the same dated April 10, 1925, estopped him from claiming that the preceding series of notes and deeds of trust securing the same involved usury. Appellant also pleaded the $4,200 note held by it as aforesaid and the acceleration thereof, and prayed for judgment for the amount thereof, together with the interest payment which accrued thereon on January 1, 1932, for interest on such amount from the date of acceleration, and for foreclosure of its first deed of trust lien to secure the same. Appellant also alleged that it had the option under its deed of trust aforesaid to pay all delin-

quent state and county taxes due on the land covered thereby and to recover judgment for the same against appellee, with foreclosure of lien on said land; that it had paid state and county taxes due on said land in the sum of $819.10, for which and interest thereon as stipulated it asked judgment.

The case was tried to the court and judgment rendered in favor of appellee against the defendants other than appellant on their respective disclaimers, canceling all unpaid interest notes held by them and the liens securing the same. The court found that said three several transactions were each usurious; that the interest collected thereon in the aggregate exceeded the amount of the note sued on by appellant and should be applied in extinguishment thereof, and in pursuance of such finding, canceled said note and the lien securing the same. The court entered judgment, however, in favor of appellant against appellee for the sum of $819.10 for taxes paid by appellant on said tract of land, with interest from the date of payment, with foreclosure of lien thereon. The court, at the request of appellant, made and filed elaborate findings of fact. Further reference thereto will be made in connection with the issues of law hereinafter discussed.

### Opinion.

■ Appellant presents various assignments of error in which it contends that the court erred in applying prior payments of interest made by appellee to other parties on notes evidencing the original loan in 1912 or the renewal thereof in 1919, in reduction and extinguishment of the principal of the note sued on by it. Appellant further contends in this connection that it acquired the note sued on in due course before maturity for a valuable consideration; that neither such note nor the deed of trust securing the same disclosed that such note was tainted with usury; that it had neither actual nor constructive notice of such taint; and that its recovery thereon could not be abated on account of such payments. The usurious character of each of the three several transactions involved herein is disclosed on the face thereof, and especially by the provisions for acceleration contained in the second deed of trust of each series. Shropshire v. Commerce Farm Credit Co., 120 Tex. 400, 30 S.W.(2d) 282, 283, par. 1, 39 S.W.(2d) 11, 12 et seq., 84 A. L. R. 1269; Dallas Trust & Savings Bank v. Brashear (Tex. Com. App.) 65 S.W.(2d) 288, 290, par. 1, and authorities there cited; Atwood v. Deming Inv. Co. (C. C. A.) 55 F.(2d) 180.

■ In each of the three instances under consideration, both the first and second deeds of trust were executed on the same day, acknowledged on the same day, and recorded together. The deed of trust securing the particular note sued on by appellant, and the second deed of trust securing the separate notes for additional interest thereon and containing the usurious provision for acceleration, were filed for record simultaneously at 8 a. m. on April 17, 1925. On the issue of constructive notice, each of such deeds of trust was of equal effect. We, however, deem the question of actual or constructive notice to appellant of the taint of usury in the note sued on immaterial to the proper disposition of this case. All contracts involving usurious interest are declared by the statutes of this state to be void as to such interest. R. S. art. 5071. Our Supreme Court held in Gilder v. Hearne, 79 Tex. 120, 121, 14 S. W. 1031, that as the result of such statutes, a usurious contract in this state gathers no vitality by its circulation but remains void in the hands of an innocent holder. See, also, Dallas Trust & Savings Bank v. Brashear, supra, page 291, par. 2, of 65 S.W.(2d), and authorities there cited.

The rule with reference to the application of payments of usurious interest is announced by our Supreme Court in International Building & Loan Ass'n v. Biering, 86 Tex. 476, 480, 25 S. W. 622, 623, 26 S. W. 39, as follows: "The law is that each payment made upon a contract affected with usury is a payment upon the principal, applied by the law, notwithstanding it was paid and received as payment of interest. This is not a question of recovering back usurious interest paid, but it is the application of the payment of such interest to the principal of the debt." See, also, Atwood v. Deming Inv. Co., supra, page 183, par. 9, of 55 F.(2d), and authorities there cited; Cotton v. Cooper (Tex. Com. App.) 209 S. W. 135, 137, par. 2; Cotton v. Beatty (Tex. Civ. App.) 162 S. W. 1007, 1009, par. 4; 66 C. J. p. 280, 282, part § 260, and authorities cited in note 78. The rule so announced will control the application of interest payments in this case, absent proof of a new agreement effectually eliminating usury, or a showing of estoppel.

Appellant contends that the transaction of January 1, 1919, in which appellee executed, and the Dallas Trust & Savings Bank accepted, renewal notes representing the balance due according to the tenor of the original notes executed by appellee to the United

States Bond & Mortgage Company on February 14, 1912, effectively purged the debt owed by appellee of the prior taint of usury. The trial court filed elaborate findings of fact. None of the propositions presented by appellant in its brief assail the accuracy of such findings. Only the substance of the more material of such findings will be stated. The most intimate relations existed between the aforesaid corporations. Appellant's witness Brindley was vice president of one of such corporations and secretary of the other. He testified to familiarity with the transactions involved in this case from the year 1916 down to date. The principal notes of the series of 1912 were by indorsement transferred by the Mortgage Company, to which they were payable, to Loan & Trust Savings Bank, a New Hampshire corporation. This fact was not disclosed to appellee, who paid all interest notes as they matured and $2,500 on the principal to the Mortgage Company. Such payments were, however, remitted by it to the holder of said notes. The court found specifically that some of said notes were afterwards transferred back to the Mortgage Company. Both the Mortgage Company and the Dallas Trust & Savings Bank were represented in appellee's locality by an agent named Shelton. Appellee, desiring to renew and extend his loan, applied to him for such extension. No formal application was made and such request was apparently a verbal one. The Mortgage Company was then no longer actively engaged in making or renewing loans, but such fact was not communicated to appellee. The Dallas Trust & Savings Bank, of its own volition and for its own purposes and profit, decided to take over the loan. The instruments evidencing the original transaction between appellee and the Mortgage Company, when considered as a whole, disclosed upon their face that such transaction was usurious, and Mr. Brindley, vice president of the Dallas Trust & Savings Bank, had actual knowledge that the usurious payments so stipulated had in fact been made. The new notes and deeds of trust prepared by said Savings Bank and sent to appellee for execution were in substantially the same form as those then held by the Mortgage Company and contained substantially the same usurious provisions. The property was still used and occupied by appellee as his homestead. The deed of trust securing the principal note recited that such note was given in lieu and in extension of the balance due on the original note to the Mortgage Company, and provided for full subrogation. Appellee executed the notes and deeds of trust so presented

to him and returned them to the Savings Bank. No statement, instruction, nor request by him in connection therewith was shown. He seems to have reposed implicit trust and confidence in said bank. Appellant's witness Brindley testified that said bank paid the original loan held by the New Hampshire Bank, but that he did not remember whether a release or a transfer was taken. Whether this transaction was before appellee executed and delivered the new notes and deeds of trust, or after such execution, was not shown. Neither the original note nor the Metze notes were ever surrendered to appellee or otherwise accounted for. The court found that the interest paid to the Mortgage Company should have been credited on the principal of its debt, and that the same was still applicable as a credit in favor of appellee. Appellant, in its opening statement in its brief, says explicitly that said second series of notes and deeds of trust were given in extension and renewal of the first series of February 14, 1912, as aforesaid.

■ If the findings of the court as a whole failed to show explicitly that Dallas Trust & Savings Bank actually or in effect acquired the original note to the Mortgage Company, and that its transaction with appellee on January 1, 1919, constituted a renewal and extension of the original debt and not the creation of a new debt or novation, the testimony was sufficient to support an inference of such fact and the court will be presumed, in support of such judgment, to have so found. Cates v. Clark, 119 Tex. 519, 33 S.W.(2d) 1065, 1066, par. 7; Malone v. Fisher (Tex. Civ. App.) 71 S. W. 996, 997 (writ refused); Wilson v. Auer (Tex. Civ. App.) 5 S.W.(2d) 160, par. 4, and authorities cited p. 162; Magnolia Petroleum Co. v. Lockwood National Bank (Tex. Civ. App.) 227 S. W. 363, par. 2; Cooper v. Newsom (Tex. Civ. App.) 224 S. W. 568, 573, par. 6; Walker-Smith Co. v. Bilao (Tex. Civ. App.) 204 S. W. 777, par. 4; Austin v. St. John (Tex. Civ. App.) 6 S.W. (2d) 224, 225, par. 2.

■ The general rule is that the mere renewal of a usurious obligation will not purge the debt of its taint of usury, even though the renewal is made to take the form of an original loan. That the obligation sued on is the last of a series of successive renewals does not change its character. The original usury descends with the original consideration along the whole line and the last is no better than the first. The introduction of a new consideration in the form of an additional loan will not purge the obligation of its taint

where a part of the new obligation is based on the usurious transaction. 66 C. J. pp. 258, 259, § 222. Usury is not expunged on renewal by giving separate notes therefor. Id., p. 260, § 225. Absent some sufficient element of estoppel, a renewal note, made payable to a new party, who takes the same with full knowledge of usury in the original, remains usurious in his hands. Id., p. 261, § 228; 27 R. C. L. top p. 254. So, where there is a palpable attempt to make the renewal of a usurious obligation appear to be a new and independent loan, notwithstanding there may be a collusive or colorable change of payee in the new obligation, usury is not eliminated. We quote in this connection from Davis v. Elba Bank & Trust Co., 216 Ala. 632, 114 So. 211, 214 [15], as follows: "The taint of usury once entering into the indebtedness persists through subsequent renewals, including the usurious interest. No matter that the subsequent transactions take the form of original loans, that applications and mortgages so declare, or that, by process of bookkeeping, or the passing of checks, it is made to appear the old debt is wiped out. All this as a method of purging the indebtedness of usury is abortive, and treated as mere evasive device."

The Court of Appeals of Kentucky, in Taulbee v. Hargis, 173 Ky. 433, 191 S. W. 320 et seq., Ann. Cas. 1918A, 762, made an extensive review of the authorities on the question of when a debt is and when it is not purged of usury by renewal. The court in its opinion in that case recited many instances in which a renewal executed to an assignee had been held effective to purge the debt of usury. All such instances are excluded by the facts of this case as hereinbefore recited. The rule applicable here is stated by that court in paragraph 11, on page 325 of 191 S. W., as follows: "If the assignee of a usurious obligation takes it, with the full knowledge of the fact that it embraces usury, and thereafter the obligor discharges it by executing a new note to the assignee for the old debt, he is not estopped nor precluded from complaining as against the payee in the new note of the usury, when it is attempted to be collected." See, also, Compton v. Collins, 197 Ala. 642, 73 So. 334, 335, pars. 3 and 4; Crim v. Post, 41 W. Va. 397, 23 S. E. 613, pars. 1 and 3; Lukens v. Hazlett, 37 Minn. 441, 35 N. W. 265, 266; Robbins v. Muldrow, 39 Kan. 112, 18 P. 64; Shirley v. Stephenson, 104 Ky. 518, 47 S. W. 581, 583; Hinkson v. Wigglesworth (Ky.) 48 S. W. 1079; Elson v. Walker, 80 Okl. 237, 195 P. 899, 900, pars. 1 and 2; Gladwin State Bank v. Dow, 212 Mich. 521, 180 N. W. 601, 607, pars. 2 and 3, 13 A. L. R. 1233; Exeter National Bank v. Orchard, 39 Neb. 485, 58 N. W. 144, pars. 3 and 4; 13 A. L. R., note page 1229; L. R. A. 1918C, note page 779. The renewal and extension of January 1, 1919, was not effective to purge the debt owed by appellee of usury. The renewal of 1925 was, under the authorities above cited, ineffective to purge the debt of usury.

■ Appellant presents an assignment in which it contends that appellee was estopped to urge the vice of usury as a defense to the note sued on. This contention is based on testimony that the Merchants' Life Insurance Company, appellant's immediate assignor of the note sued on, procured from appellee a written statement that he had received its letter advising him that it had purchased said note; that he was the owner of the property covered by the mortgage securing the same; that it was a just and valid obligation; and that no part of the principal had been paid. Said statement was not dated. As above recited, it purported to have been signed after said Life Insurance Company had purchased the note. No testimony in support or explanation of such transaction was offered. While such statement apparently preceded the assignment of the note and lien to appellant, there was no testimony that any of appellant's officers or representatives knew of the same or in any way relied thereon at the time it acquired said note. There was testimony tending to show that appellant took over the entire assets of the Life Insurance Company, and no testimony that this particular note and lien received separate consideration. The court found that appellee, at the time he signed said statement, was ignorant of the fact that his said several transactions were usurious, and therefore, as to all interest thereon, invalid. Appellant, however, failed to plead estoppel based on said statement, which failure conclusively bars any affirmative relief on that ground.

The trial court, on the record presented, properly applied all interest payments to the extinguishment of the note sued on by appellant, and the judgment is affirmed.

ALEXANDER, Justice (concurring).

I agree that under the findings of the court the judgment of the trial court should be affirmed. However, I do not subscribe to that part of the majority opinion wherein it is held as follows: "Absent some sufficient element of estoppel, a renewal note, made payable to a new party, who takes the same with full knowledge of usury in the original, remains usurious in his hands." Neither do I

subscribe to the doctrine laid down in the quotation from Davis v. Elba Bank & Trust Co., 216 Ala. 632, 114 So. 211. Such holding may be correct under some circumstances, but not in all cases. I desire to make it clear that in my opinion if a third party, at the request of the debtor, takes up and pays off a usurious loan and takes a new note therefor from the debtor, his claim for the amount so advanced by him is valid even though he knew that the old debt paid off by him was usurious; and the mere fact that the new creditor took an assignment of the old debt in order to make sure that he was subrogated to the lien securing same would not alter the case, provided such new creditor, at the request of the debtor, actually advanced the amount of his claim and used the same in paying off the usurious debt.