## LILES et al. v. THOMPSON.

### No. 3193.

Court of Civil Appeals of Texas. El Paso.

June 20, 1935.

Rehearing Denied Sept. 12, 1935.

Weeks, Hankerson & Potter and T. N. Jones, all of Tyler, Tarlton Morrow and Weeks & Morrow, all of Wichita Falls, and Robert B. Keenan, of Van Nuys, Cal., for plaintiffs in error.

Vinson, Elkins, Sweeton & Weems, of Houston, Cary M. Abney, of Marshall, and David T. Searls, of Houston, for defendant in error.

HIGGINS, Justice.

M. L. Thompson brought this suit against W. T. Womack and others claiming mineral estates under Womack to recover a rectangular strip of land in the Isaac Moore 640-acre survey in Rusk county and for damages. The boundary lines on the east and west are about 991 varas long; the strip is about 49 varas wide, east and west. The east line of the strip is the east line of the Moore survey and west line of the Cadena League. Thompson later dismissed his suit for damages.

Certain parties intervened, claiming 1.52 acres off of the north end of the strip. They claimed title by limitation under J. O. Tucker.

Upon trial without a jury judgment was rendered in Thompson's favor for all of the land sued for except the 1.52 acres claimed by the interveners.

Womack and those claiming under him appeal. Thompson also appeals, complaining of the judgment in favor of the interveners.

S. T. Newton formerly owned the Moore survey.

On December 11, 1879, he conveyed to M. L. Thompson 100 acres out of the survey, describing same by metes and bounds. This tract lies immediately south of a 100-acre tract off of the north end of the sur-

vey conveyed the same day by Newton to D. T. and S. L. Thompson.

January 3, 1882, Newton conveyed 240 acres out of the survey to P. K. Miller, describing same by metes and bounds. This tract lies immediately south of the 100 acres previously conveyed to M. L. Thompson. By mesne conveyances the north 126½ acres of the Miller land passed to Thompson.

At the time of Newton's death he owned all of the Moore survey except that conveyed by the deeds to the Thompsons and Miller.

November 24, 1883, the administrator of Newton conveyed to Stephen Reaves. It was agreed the deed conveyed all of the Moore survey that Newton had not conveyed in his lifetime.

November 22, 1900, Reaves conveyed to Womack. The material portions of the deed read:

"That I, Stephen Reaves, of the County of Smith, and State of Texas, for and in consideration that W. L. Womack of the County of Rusk and State of Texas, has this day paid to me twenty-five dollars in cash, and has executed and delivered to me his promissory note for the sum of two hundred and seventy-five dollars, payable as follows: one-fourth of the amount of said note twelve months after date, one-fourth two years after date, one-fourth three years after date, and one-fourth four years after date and bearing interest at the rate of ten per cent per annum from date and expressly retaining the vendor's lien on the following described tract of land situated in Rusk and Smith Counties, Texas:

"'142 acres, more or less beginning at P. K. Miller's S. W. corner from a stake from which a red oak 5 in. brs. W. 6 varas, and a hickory 6 in. bears E. 12 2/10 vrs. Thence south at 665 varas to a post from which B. J. 8 in. brs. N. 40 E. 4 vrs. the other witness tree gone. This is the S. W. corner of the Isaac Moore headright, Thence East at 522 vrs. County line to corner 1211 vrs. on East E. B. line of the Isaac Moore survey from a post from which a black oak 36 in. bears N. 60 E. 23 vrs.; Thence N. 665 vrs. to P. K. Miller S. E. corner to a post in the Beaver Ruin; Thence W. at 1211 vrs. to beginning, sixty acres of said survey in Smith County and eighty-two acres in Rusk County, the same being about one mile north of the S. E. corner of Smith County, Texas.

" 'And to further secure the payment of said note and interest the said W. L. Womack has this day given a mortgage on one-half of all the cotton to be grown on the above described land, during each and every year until said note is fully paid off and satisfied, the receipt of said twenty-five dollars in cash, note and mortgage being hereby acknowledged do grant, quit-claim, sell and release unto the said W. L. Womack his heirs and assigns, all the rights, title, interest and claim ·in and to said above described land, being the South portion of the Isaac Moore survey No.. 525, being all of the Isaac Moore survey not sold by S. T. Newton in his lifetime, said to be 200 acres, more or less.' "

In May, 1933, the devisees of Reaves conveyed to J. J. McClelland, without warranty, all of the Moore survey. The title to the disputed area, if any, thus acquired by McClelland, passed to Thompson by quitclaim deed on July 11, 1933.

Thereafter, on August 3, .1933, Thompson filed amended petition upon which the case was tried.

### Opinion.

Thompson contended the strip is embraced within the metes and bounds of the deeds from Newton to him of December 11, 1879, and to P. K. Miller of January 3, 1882. The point at issue in that connection is whether the boundary lines of those tracts on the north and south connected with the east line of the Moore survey or terminated at Thompson's east fence, which was built and maintained by him for many years west of the Moore east line. This issue the court found against Thompson, holding that the boundary lines mentioned did not extend east of said fence, thus excluding the strip from the metes and bounds of the land conveyed by the deeds of December 11, 1879, and January 3, 1882.

█ This ruling of the court is sustained, though the question is debatable. It is unnecessary to discuss this phase of the case, for the court held that Thompson acquired title to the strip through· the deeds of the Reaves heirs and McClelland. This ruling is also sustained.

█ The plaintiffs in error assert that in the light of all the surrounding facts and circumstances the deed from Reaves to Womack should be construed as embracing the disputed area, though it is not included within the metes and bounds of the par-

ticularly described tract. They rely upon the general description "being all of the Isaac Moore Survey not sold by S. T. Newton in his lifetime, said to be 200 acres more or less." In behalf of this theory, counsel for plaintiffs in error have presented an able brief, but we see no occasion in this case to depart from the general rule applied in numerous cases which hold in case of repugnancy between a general and particular description of land conveyed the latter will control. The general description contained in the deed in question is not harmonious within itself as applied to the disputed land. The general description also refers to the land as "being the Southern portion of the Isaac Moore Survey." This would not accurately refer to the disputed area because it is in the east and more northerly portion of the survey.

Again the vendor's lien was retained against the particularly described land only, and if Reaves intended to convey other land, it would seem the lien would have been retained against all land that would be conveyed by the deed.

The particular description in the deed is specific and certain. There can be no doubt as to the land it describes.

The following cases support the view that the specific description in the deed controls the general description: McAnally v. Texas Co. (Tex. Sup.) 76 S.W.(2d) 997; Cullers v. Platt, 81 Tex. 258, 16 S. W. 1003; Whaley v. Lemmon (Tex. Civ. App.) 281 S. W. 321; Boggess v. Allen (Tex. Civ. App.) 56 S. W. 195; Id., 94 Tex. 83, 58 S. W. 833; Sanger v. Roberts, 92 Tex. 312, 48 S. W. 1; Schaffer v. Heidenheimer, 43 Tex. Civ. App. 366, 96 S. W. 61; McFaddin v. Johnson (Tex. Civ. App.) 180 S. W. 306; Tate v. Betts (Tex. Civ. App.) 97 S. W. 707; Stark v. Brown (Tex. Civ. App.) 210 S. W. 811; Ridgell v. Atherton (Tex. Civ. App.) 107 S. W. 129; Tucker v. Angelina County Lbr. Co. (Tex. Com. App.) 216 S. W. 149; Scheller v. Groesbeck (Tex. Com. App.) 231 S. W. 1092; Yarbrough v. Clarkson (Tex. Civ. App.) 155 S. W. 954; Texas Mexican Ry. Co. v. Scott, 60 Tex. Civ. App. 482, 129 S. W. 1170; Standefer v. Miller (Tex. Civ. App.) 182 S. W. 1149.

The lessees of the mineral interest also complain of the refusal to render judgment in their favor for the cost of an oil well · drilled by them upon the land recovered by Thompson. They acquired their lease-

hold estate prior to the filing of the suit. They were first made defendants by Thompson's amended petition filed August 3, 1933. The suit was filed April 24, 1933. The well was commenced the latter part of June, 1933, and completed the latter part of the following July.

The court found: "If the well had not been drilled, 'the strip' would have been drained by adjacent wells to the East and West thereof, those on the west being upon lands owned by M. L. Thompson. It was necessary to drill a well to protect 'the strip' against such drainage. The drilling of the well was beneficial to and enhanced the value of 'the strip' in more than the amount of the cost of drilling and equipping the well."

The lessees drilled the well knowing of the pendency of the suit and of the adverse claim asserted by Thompson under the deeds of December 11, 1879, and January 3, 1882. The well was drilled over the vigorous protest of Thompson. Three hearings on defendants' application to secure a permit to drill were held by the Railroad Commission at Austin, and, notwithstanding the advanced age of plaintiff, he attended two of these hearings, and sent a representative to the other hearing, which he was prevented from attending on account of illness. At each of these hearings he testified that he was claiming the land on which the well was drilled.

In Houston Production Co. v. Mecom Oil Co. (Tex. Com. App.) 62 S.W.(2d) 75, 77, the lessee of the mineral interests, the Mecom Oil Company, drilled the oil well after notice of the adverse claim and pendency of suit. The jury found the Mecom Oil Company drilled the well, its president and general manager, honestly and in good faith believing, under all the facts before him, that said company had the right to develop the land. In reversing and rendering judgment, denying recovery of the cost of drilling, Judge Leddy said:

"We are inclined to adhere to the well-established rule that, where one enters into possession of land and makes improvements thereon with full knowledge of the pendency of an action to enforce an adverse claim to the premises, he cannot be considered a trespasser in good faith so as to entitle him to recover the cost of his improvements. Guffey v. Smith [237 U. S. 101, 35 S. Ct. 526, 59 L. Ed. 856], supra; Pittsburgh & W. V. Gas Co. v. Pentress Gas Co., 84 W. Va. 449, 100 S. E.

296, 7 A. L. R. 901; Henderson v. Ownby [56 Tex. 647, 42 Am. Rep. 691], supra; Probst v. Bearman [76 Okl. 71, 183 P. 886], supra.

"We are not impressed with the force of the reasoning that a distinction should be made between an ordinary trespasser and an oil and gas trespasser in regard to recovery for improvements. The basis for the claimed distinction is that, where oil and gas land is involved, it is often necessary to drill the same in order to prevent its being drained by adjoining wells. We think a complete answer to this proposition is that, when a court of equity is confronted with such a situation, it has ample authority to take such action as will prevent the property's being drained of its oil and gas pending the final adjudication of title."

In the present case the lessees drilled with notice of the adverse claim of Thompson and over his strenuous objection. He vainly endeavored to prevent the granting of a permit by the Railroad Commission for drilling the well. It is true he did not prevail in the suit upon the title which he originally asserted. In this respect there is a difference between this case and the case above cited. But it seems to us a serious impeachment of the good faith of the lessees when they persisted in developing the land for oil over the vigorous protest of an adverse claimant who was then suing; of which adverse claim and suit such lessees had full notice. It would seem in such a case the lessees should be held to have expended their money at their own risk and cannot be justly considered as innocent trespassers. As stated by Judge Leddy, a court of equity possessed ample authority to take such action as might be necessary and proper for their protection. The lessees did not see fit to resort to the courts for their protection, but elected to drill over the protest of the adverse claimant. Under the circumstances they are not to be regarded as innocent trespassers so as to entitle them to reimbursement for the cost of the well at the expense of the adverse claimant who vainly sought to prevent them from incurring such expense.

In this connection it may also be said the court made no finding upon the issue of good faith. The record shows no request for additional findings. In support of the judgment it will be presumed the court found such issue against these

lessees if the evidence supports such an adverse finding. Cates v. Clark, 119 Tex. 519, 33 S.W.(2d) 1065; Magnolia Pet. Co. v. Lockwood Nat. Bank (Tex. Civ. App.) 227 S. W. 363; Malone v. Fisher (Tex. Civ. App.) 71 S. W. 996; Lincoln Nat. L. Ins. Co. v. Anderson (Tex. Civ. App.) 71 S.W.(2d) 555; Id. (Tex. Com. App.) 80 S.W.(2d) 294.

And, as stated above, we are of the opinion the facts in this case impeach the good faith of the lessees.

This disposes of the appeal as between Thompson and the Womack interests.

With reference to the 1.52 acres awarded interveners, Thompson claims Tucker's possession was permissive and therefore not adverse to him. He claims that upon request he permitted Tucker to fence the 1.52 acres within the latter's inclosure so Tucker could have water for his stock out of a slough upon the land. Assuming Thompson had title under the deeds of December 11, 1879, and January, 1882, the evidence supports the trial court's finding upon the issue of limitation.

It will serve no purpose to quote or discuss the evidence in support of the finding. The ruling of the trial court upon the issue is sustained.

Affirmed.