MRS. NETTIE G. WEBB ET AL. v. GALVESTON AND HOUSTON INVESTMENT COMPANY ET AL.

Decided May 27, 1903.

**1.—Usury—Notes Carried Into New Purchase.**

Where plaintiffs executed usurious notes to an investment company in payment for a house and lot, and after paying part of them exchanged the property with the company for another lot, paying $500 cash, receiving credit for the amount of the notes already paid, and executing new notes in the same number and amount for the notes remaining unpaid, the agreement being that the old contract, though not the old notes, was to be continued, the usury tainting the notes first given was carried into the new agreement—such notes not going merely as a part of the purchase money of the second lot—and the second contract was vitiated thereby.

**2.—Same—Penalty—Limitations—Disability.**

Since the statute gives as a penalty for usury double the amount of the interest paid within two years immediately preceding the institution of suit therefor, and makes no exception as to persons laboring under disabilities, a married woman can not recover a greater penalty than double the amount of interest paid within two years. Rev. Stats., art. 3106.

**3.—Same—Purchaser of Notes—Good Faith.**

Where, in a suit to recover the penalty for usury, one of the defendants pleaded that it was a purchaser in good faith and without notice of the notes on which plaintiffs had paid the usurious interest, but afterwards filed a joint amended answer with its codefendant claiming that there was no usury, the question of good faith in the purchase of the notes did not arise.

**4.—Same—Penalty—Party Liable.**

Since the statute provides that where usury is shown, double the amount

of the interest received may be recovered from the person, firm or corporation receiving the same, a party to whom the usurious notes were indorsed and who received the interest thereon was alone liable for the penalty.

Appeal from the District Court of Harris.  Tried below before Hon. Wm. H. Wilson.

*R. L. Whitehead, Brooks & Shelly,* and *S. P. Weisiger, Jr.,* for appellants.

*Hutcheson, Campbell & Hutcheson,* for appellees.

FLY, ASSOCIATE JUSTICE.—This suit was instituted by Mrs. Nettie G. Webb, joined by her husband, W. R. Webb, to recover of the Galveston and Houston Investment Company and the Peoples Loan and Homestead Company the sum of $644.41, amount paid in excess of the principal on certain notes executed by them to defendants, and the sum of $533.28, penalty on account of usurious interest collected by them on the notes.  The cause was tried by the court, without a jury, and judgment rendered for appellees.

The facts are these:  In 1893 the Galveston and Houston Investment Company conveyed to Mrs. Webb lot number 11 in block 20 of the Fair Grounds addition to the city of Houston, for the sum of $720, and entered into a contract to build, and did build, her a house thereon for $1800.  On the house and lot she paid the sum of $95, and she and her husband executed to the investment company 120 promissory notes, the first for $31.67, and each of the others for $31.32, one to be paid on the 13th of each month, until all were paid, the last note being payable in ten years, of course, and each bearing 10 per cent interest from maturity.  The total value of the house and lot was $2520, which, after deducting the $95, left $2425, which was secured through the 120 notes and a vendor's lien.  In 1897, after appellants had paid off fifty of the promissory notes, they became desirous of buying lot number 5, block 20, from the investment company, and proposed to give it $3000 for the lot, the terms of payment being that appellants should convey lot 11 to the company, and should pay $500 in cash, and should have credit for their equity in lot 11, amounting to $1010, and should pay the balance in seventy monthly payments of $31.32 each.  The seventy original notes given for lot 11 were delivered to appellants, and they executed for the balance of the purchase money on lot 5, seventy notes for the same sums and payable at the same dates as the old notes returned to them.  They paid forty-eight of the last seventy notes to the Peoples Loan and Homestead Company, to which company they had been indorsed by the Galveston and Houston Investment Company.

It is clear that each one of the 120 notes executed by appellants in 1893 contained $20.21, principal, and, with the exception of the first, each contained $11.11 interest.  The first had embodied in it $11.46

interest. The seventy notes given in the transaction for the purchase of lot 5 each contained $21.28 principal, and $11.04 interest. This suit was filed on August 19, 1901.

The original contract between appellants and the investment company is identical with that in the case of the latter against Grymes, 94 Texas, 609, in which a majority of the Supreme Court held the contract usurious. The question as to usury in the original contract is not an open one, therefore, and the sole question to be considered is as to usury in the second contract between the parties.

It is the contention of appellants that the old contract formed the basis of the new, and that the usurious interest therein entered into and vitiated the new contract; while it is insisted by appellees that the last contract is independent of the first, and that appellants can not set up usury in the last contract, because whatever interest there may be in the notes was given as part of the purchase money of lot number 5.

The contention of appellees is based on that doctrine which is to the effect that the purchaser of mortgaged property from the mortgagor, who assumes a usurious debt as part of the purchase money, can not take advantage of the usury, on the principle that he has kept back enough of the purchase money to pay the mortgage, and to allow him to plead usury would be to give him the property for less than he agreed to pay for it. B. & L. Assn. v. Price (Texas Civ. App.), 46 S. W. Rep., 94; B. & L. Assn. v. Winans, 24 Texas Civ. App., 544, 60 S. W. Rep., 826; Jones on Mort., sec. 745.

All the authorities apply the doctrine, however, to third persons who buy the mortgaged premises, and we have seen no case where the doctrine has been applied to a new contract made between parties to other contracts, the prior contract entering to some extent into the new contract. But let it be admitted that where the usurious interest contained in the old contract is used as part of a purchase price which the maker of the note has agreed to pay for a parcel of land, usury can not be pleaded, still we do not think that the facts of this case would entitle appellees to the application of the rule. The usurious interest embodied in the seventy notes remaining unpaid when the second contract was made, was carried into the seventy notes given in their place, and did not go as a part of the purchase money on the second lot bought by appellants, as an analysis of the facts, we think, will fully show.

In 1897 appellants desired to buy lot five from the investment company, and made an offer of $3000 for it, which was accepted. Mrs. Bryan, the agent of the investment company, testified thus as to the transaction between Mrs. Webb and Lasker, acting for the company: "In 1897, when the question came up about the exchange of the property, the proposition she submitted to me, and which I submitted to Mr. Lasker, was that she wanted to exchange her property, and put in what she had paid on that property, and get back exactly what she had paid, and I think she had paid on the other property something like $1000, as she claimed; and the difference between those notes, fifty-five of them,

and other notes. Now the offer, as I remember it, that was made by Mrs. Webb, was that the company was to take her property back at $2500 and she was to pay the company $3000 for the other property, which stood the company at more than that; that was her proposition, and Mr. Lasker accepted it, provided she paid $500 in cash." The only other witness that testified as to the second contract was Mrs. Webb, and she said: "In 1897 I offered the company $3000 for lot 5 because I intended to carry out my contract and pay the difference between the price of the two lots. I agreed to pay $500 cash. My agreement with Mr. Lasker was that I was to exchange, and in this exchange I was to pay $500 cash and continue the old contract. I was not to continue the old notes, but was to continue the old contract. The company wanted more than $3000 for lot 5, but I got it for that amount; it was a fair price for the lot. I paid $500 cash; I did not surrender my equity; I just continued the old contract to pay notes I had agreed to pay, and did pay $500 cash. I wanted to continue the old contract and pay the difference in cash. I expected the company to take back lot 11 and release me from any obligation on that lot; my equity in lot 11 was at that time $1010."

It is clear from the testimony that the company accepted $3000 for lot number 5, to be paid $500 in cash, $1010 in the equity held in lot 11, and the balance in notes. The cash payment and the equity, amounting to $1510, being deducted from the $3000 purchase price, leaves $1490 unpaid on the lot. For this sum seventy notes, aggregating $2192, were given by appellants, and in those notes must have been included $702 interest. Interest at the rate of 10 per cent per annum on the several sums expressed in the seventy notes would amount to $434.85, which deducted from the amount of interest included in the notes, would give the sum of $267.15 usurious interest. In the forty-eight notes paid by appellants on the last contract were included $1021.44 principal, and $481.92 interest. Of the latter amount $184.07 was usurious.

Appellants would be entitled to recover only the interest paid within the two years immediately before the suit was instituted, that is on the last half of the forty-eight notes. The interest on the twenty-four notes last paid would amount, at 10 per cent, to $155.40, while there was actually paid thereon $240.96. Adding the $1021.44 principal paid through the forty-eight notes to double the amount of the interest paid, on the twenty-four notes, viz., $481.92, and we have the sum of $1503.36, from which deduct $1490, the principal of the seventy notes, and there remains $13.36, which appellants should recover.

No question of limitations arises in this case. Independent of any plea of limitations, article 3106, Revised Statutes, gives as a penalty double the amount of the interest paid within two years immediately preceding the institution of the suit, and the law makes no exception as to persons laboring under disabilities. No person can recover a

greater penalty than double the amount of interest paid within two years.

The Peoples Loan and Homestead Company filed an original answer in which it set up that it was a purchaser in good faith without notice, of the promissory notes, and praying that, if judgment should be rendered for appellants, it recover judgment over against the Galveston and Houston Investment Company for principal, interest and attorney's fees due on the twenty-two notes remaining unpaid. That pleading was abandoned, however, and in an amended answer the first named company filed a joint defense with the investment company, the ground of defense being that neither of the contracts was tainted with usury. The question of the bona fides of the Peoples Loan and Homestead Company does not therefore arise, and need not be discussed.

It is provided in article 3106, Revised Statutes, that where usury is shown, double the amount of the interest received or collected may be recovered from "the person, firm or corporation receiving the same." The testimony in this case indicates that the interest paid in the two years immediately preceding the institution of the suit was received by the Peoples Loan and Homestead Company, and it follows that from it alone should the penalty be recovered. The fact of payment to the loan company is inferred from the circumstance that the forty-eight notes paid as a part of the consideration for lot 5 were indorsed to the Peoples Loan and Homestead Company, and it will be presumed they were the property of that company.

The judgment of the District Court, in so far as it affects the Galveston and Houston Investment Company, is affirmed, but as to the Peoples Loan and Homestead Company it is reversed, and judgment here rendered that appellants recover of said Peoples Loan and Homestead Company the sum of $13.36, with all costs of this and the lower court, and that the twenty-two notes for $31.32 each remaining unpaid be canceled, and that the lien evidenced by them and the deed from the Galveston and Houston Investment Company be canceled and declared of no effect.

*Affirmed in part; reversed and rendered in part.*

Writ of error refused.