### JOHN HANCOCK MUT. LIFE INS. CO. v. HOUSTON et ux.

No. 13025.

Court of Civil Appeals of Texas. Fort Worth.

Oct. 12, 1934.

Rehearing Denied Nov. 16, 1934.

Geo. A. Titterington and McBride, O'Donnell & Hamilton, all of Dallas, for appellant.

J. W. Madden, Jr., of Dallas, for appellees.

DUNKLIN, Chief Justice.

The question to be determined in this case is whether or not the contracts involved were tainted with usury.

On December 1, 1917, C. C. Houston, joined by his wife, Jennie B. Houston, executed their promissory note in favor of the Maxwell Investment Company for the principal sum of $5,000, payable January 1, 1928, with interest thereon at the rate of 6 per cent. per annum according to the terms of nine coupon notes attached to the principal note. The first of those coupon notes was for the sum of $325, payable on January 1, 1919. Each of the other eight coupon notes were for the sum of $300, the first of which was

payable January 1, 1921, and the remainder on January 1st of succeeding years, the last maturing January 1, 1928. Each of those coupon notes recited that it was executed according to the tenor of the principal note and stipulated for the payment of 10 per cent. interest after maturity until paid.

On the same date the notes were executed and as a part of the same transaction, the makers executed to the Maxwell Investment Company a deed of trust to secure the same, J. E. McPherson being named as trustee, covering 141.57 acres of land situated in Denton county.

All those notes, with the lien securing the same, were transferred and assigned by the Maxwell Investment Company to the Central Life Assurance Society on April 5, 1918, and on January 13, 1928, the assignee transferred and assigned the same to the John Hancock Mutual Life Insurance Company. On December 27, 1927, C. C. Houston executed to the John Hancock Mutual Life Insurance Company his promissory note in the sum of $5,000, payable as follows: $500 on January 1, 1929; $250 on January 1, 1930; $250 on January 1, 1931; $4,000 on January 1, 1938, with interest at the rate of 6 per cent. per annum payable annually on the 1st day of January of each succeeding year, as evidenced by ten interest coupon notes attached to the original note as a part thereof. Each of said coupon notes bears interest after maturity at the rate of 10 per cent. per annum. At the same time said notes were executed and in order to secure the same, C. C. Houston and wife executed a deed of trust in favor of the John Hancock Mutual Life Insurance Company covering the same land that was covered by the deed of trust to the Maxwell Company. The deed of trust last mentioned recited that it was executed in renewal and extension of the note in favor of the Maxwell Investment Company, fully described in the deed of trust executed to secure the same, with the further recital that said note had been assigned to the John Hancock Mutual Life Insurance Company and that the Hancock Company is subrogated to all the rights and equities growing out of the deed of trust in favor of the Maxwell Company, which is recited to be a vendor's lien, and an assignment of the Maxwell Company note to the Hancock Company was written across the face of the note and delivered to the Hancock Company.

This suit was instituted by C. C. Houston and wife against the John Hancock Mutual Life Insurance Company to enjoin the sale of the property under the deed of trust executed to the defendant by the trustee named in that instrument, and in the alternative to cancel the deed that had already been made by the trustee, Bennett, acting under the stipulations in the said deed of trust; the defendant John Hancock Company having become a purchaser at that sale.

The basis of plaintiffs' claim for the relief prayed for was the contention presented in their pleadings that the notes executed in favor of the Maxwell Company were usurious and that the same taint inured in the notes in favor of the Hancock Company. It was further alleged that plaintiffs had paid a total of $5,025 to the Hancock Company on the notes executed to that company, and plaintiffs prayed that the same be applied as credits on the principal, and that the payments so made had liquidated the principal of the Hancock note. There was a further prayer for recovery, as a penalty, double the amount of $450, which was paid as interest in the spring of 1932.

In addition to a general denial, the defendant pleaded estoppel against plaintiffs, based upon allegations that it had taken up the Maxwell note at plaintiffs' special instance and request and upon representation made at the time that that note was secured by a valid lien on the property.

Upon the trial of the case without a jury, the court rendered judgment sustaining plaintiffs' plea of usury and canceling the sale made under the deed of trust in favor of the John Hancock Mutual Life Insurance Company. The judgment further recites a finding that plaintiffs had paid on the Hancock note the sum of $4,585.97, which was applied by the court on the principal of that note, leaving a balance of $414.03, to secure which the court decreed a valid lien on the property in controversy. But the court did not render a judgment in the defendant's favor for that sum by reason of the further finding that the same was not due at the time the property was posted for sale by the trustee. There was a further decree that, upon the payment by plaintiff of that balance, the property should be free and clear of any lien under either of the deeds of trust. As shown by the recitals in the judgment, the court found that the notes in favor of the Maxwell Company were usurious and that the note in favor of the Hancock Company was tainted with the same vice. But there was no finding that the Hancock notes were of themselves usurious.

The defendant has prosecuted this appeal.

We will first review the transaction with the Maxwell Investment Company, and we shall quote only such portions of those instruments as are pertinent to the issue of usury.

The principal note for $5,000 which plaintiffs executed to the Maxwell Company contained this stipulation:

"In the event of default in the payment of this note or any interest thereon, both note and coupons shall be payable at the office of said company, Dallas, Texas.

"Partial payments may be made in accordance with privilege endorsed on the back of this note."

The indorsement on that note read as follows: "The makers of this note have the, privilege to pay One Hundred Dollars, or any multiple thereof at any interest paying date on and after January 1, 1919, provided, sixty days written notice is given."

The deed of trust given to secure the Maxwell note recites that it was given to secure the payment of the $5,000 note and the coupon interest notes attached thereto. Following that recital are these provisions:

"Now, therefore, it is mutually agreed between the parties hereto that if the said grantors shall faithfully keep and perform all the covenants and agreements above set forth, and well and truly pay off and discharge all notes and other indebtedness secured and intended to be secured herein, then and in that case only, this conveyance shall be null and void, and shall be released in due form at the expense of the grantors; otherwise it shall remain in full force and effect.

"But if default be made in the payment of any indebtedness herein provided for, whether principal or interest, when the same becomes due and demandable, or if default be made in any stipulation, agreement or covenant herein contained, then the whole of the indebtedness may, at the option of the said third party, or any holder of said note or notes or other indebtedness secured hereby, without notice to said grantors, be declared due and payable. * * *"

Then follow further provisions authorizing the sale of the property at public auction with direction for the application of the proceeds of the sale as follows: First, to the payment of cost and expense of executing the trust; second, to the payment of attorney's fees, taxes, and assessment; "third, to the payment of the whole debt due the said third party, its successors or assigns, together with all interest due thereon; and lastly, the remainder, if any there be, shall be paid to the said grantors."

█ The Maxwell notes and the deed of trust executed to secure the same are to be construed together as evidencing an entire contract in determining whether or not those notes stipulated for the payment of a greater rate of interest than 10 per cent. per annum in violation of article 4979, Rev. Civ. Statutes 1911. 10 Tex. Jur. p. 286, § 166.

In Galveston & H. Investment Co. v. Grymes, 94 Tex. 613, 63 S. W. 860, 861, 64 S. W. 778, the following was said:

"To determine the question of usury in a contract, it must be tried by the statutory limitation of 10 per cent. per annum for the use, forbearance, or detention of the money for one year. If the interest contracted for exceeds that rate, it constitutes usury, no matter in what form the contract may be expressed. The court must give to the terms of the contract, if fairly susceptible of it, a, construction that will make it legal, but has no right to depart from the terms in which it is expressed to make legal what the parties have made unlawful. * * *

"If the transaction was such as to render the intention of the parties doubtful, the court would adopt that construction which would attribute to them a legal intention; but we cannot adopt any method for the solution of this question by which we must arrive at a different result from that shown by the contract, because it is impossible to conceive of the parties having an intention to use certain forms of contract that would produce a result different from that which they embodied in the contract actually made."

That announcement was quoted with approval in the opinion of the same court in Shropshire v. Commerce Farm Credit Co., 120 Tex. 400, 30 S.W.(2d) 282, 39 S.W.(2d) 11, 84 A. L. R. 1269, in which there is an extended review of the former decisions in this state and other authorities, and that decision is now the leading decision in this state.

Many decisions of the appellate courts of this state are cited and discussed in briefs of counsel by both parties to this appeal. Some of these decisions were rendered by our Courts of Civil Appeals, and writs of error granted in some are still undisposed of by our Supreme Court. It seldom happens that the same stipulation in a contract upon which a plea of usury is predicated is to be found in another, and for that reason it is difficult to apply the decisions to the case at hand. However, the pertinent stipulations in

the contract involved in the case of Marble Savings Bank of Rutland, Vt. v. Davis, reported in (Tex. Civ. App.) 69 S.W.(2d) 812, are substantially the same and well-nigh identical with the quoted provisions in the Maxwell notes and deed of trust. The Texarkana Court of Civil Appeals condemned the contracts in that case as usurious. But a writ of error was granted in that case by the Supreme Court, where the case is still pending and undetermined. The opinion of the Court of Appeals in that case was based principally on the decision of the Supreme Court in the Shropshire Case, supra. But for reasons hereinafter stated, it is unnecessary for us to determine whether or not the trial court erred in condemning the Maxwell note as usurious.

The note in favor of the Hancock Company, dated December 27, 1927, was for the principal sum of $5,000, with interest at the rate of 6 per cent. per annum, payable annually on the 1st of January of each succeeding year, as evidenced by ten coupon notes attached thereto, with this stipulation: "It is expressly agreed by the maker hereof that in case of default in the payment of any of the said instalments or interest notes for the space of twenty days after the same shall become due and payable, or failure to comply with any of the agreements and conditions set forth in the deed of trust to secure this note, the whole of the principal and interest *then accrued* may, at the option of the legal holder, be declared immediately due and payable without notice." (Italics ours.)

The deed of trust given to secure those notes also provides that: "In case of default in the payment of any of the said principal installment or interest notes for the space of 20 days after the same shall become due and payable, or failure to comply with any of the agreements or conditions set forth herein, the whole of the principal and interest *then accrued* may at the option of the legal holder be declared by such holder immediately due and payable without notice and be collected with all legal assessments." (Italics ours.)

█ It is clear from those provisions that, if the maturity of the obligation should be accelerated at the option of the holder, only the indebtedness then accrued could be collected; and hence those notes did not of themselves stipulate payment of usurious interest. Clements v. Scott (Tex. Civ. App.) 60 S.W.(2d) 258; Schoolcraft v. Temple Trust Co. (Tex. Civ. App.) 64 S.W.(2d) 1052.

█ It is our conclusion that, even though it be said that the Maxwell notes were in violation of our usury laws, the Hancock notes were not tainted with the same vice; since there was an additional independent consideration therefor, to wit, an extension of the debt, and since they evidenced a separate unconditional entire contract enforceable by the payee without resort to the Maxwell notes. 10 Tex. Jur. p. 251, par. 144, and page 264, par. 145, and decisions there cited.

██ We conclude further that the acts of plaintiffs in procuring the Hancock Company to take up and extend the loan evidenced by the Maxwell notes constituted a waiver of their claim now made that those notes were usurious and that the same taint inured in the Hancock notes. And the facts alleged in the defendant's plea of estoppel were sufficient to show such waiver even if it be said that the Hancock Company was not induced to take up the former notes by any misrepresentation of fact by plaintiff Houston. The following announcement in 67 C. J. 295, is supported by numerous authorities cited: "A waiver may be created by acts, conduct or declarations insufficient to create a technical estoppel."

We quote the following from 66 C. J. 251, § 207: "A loan made in good faith, and at a legal rate of interest, for the purpose of enabling the borrower to pay a debt owed to a third person is not affected by any usury that may inhere in said debt. This rule is none the less applicable when the maker of the new loan knows that the debt to be discharged is usurious, unless it is merely a colorable transaction to cover the original usury."

And King v. Lane, 66 Okl. 304, 169 P. 901, L. R. A. 1918C, p. 354: "Where the lender of money neither charges nor receives any more than legal interest, the fact that the money is used to pay usurious debts due from the borrower to a third person does not render the loan usurious, though the lender knows at the time of the loan that the money is borrowed for the purpose of paying such usurious debts."

In Mills v. Johnston, 23 Tex. 328, the court says: "We take it to be a well established principle, that where one person, by request, pays the debt of another, although the debt so paid may have arisen upon an illegal contract, the party who pays it, is entitled to recover it back from him, at whose request it was paid."

The judgment of the trial court is reversed, and the cause remanded for further proceedings not inconsistent with the foregoing conclusions.

180

LATTIMORE, Justice (concurring).

Webb v. Galveston & H. Investment Co., 32 Tex. Civ. App. 515, 75 S. W. 355, does not conflict with our decision so far as we can learn from the opinion. There the renewal notes were usurious, were made to the same payee as the original notes, and the People's Investment Company did not undertake to lend the payor any money as at the instance of the payor's desire to pay the usurious contract. Likewise, we are not in conflict with Lincoln Life Insurance Co. v. Anderson (Tex. Civ. App.) 71 S.W.(2d) 555. Our views are so aptly stated in the concurring opinion of Mr. Justice Alexander that I need not repeat them here.

It is consistent to hold that, if appellant had agreed with appellee that appellee deed it the realty covered by this mortgage in consideration of appellant paying the Maxwell usurious loan, appellant would be bound and could not, having paid the usury, recover same from either Maxwell or Houston, and then hold that if appellant agreed to pay Maxwell in consideration that appellee sign a note therefor. Such contract made at the free desire of Houston is also valid. The first is settled law.; the second ought to be.