### JOHN HANCOCK MUT. LIFE INS. CO. v. HARRISON.

#### No. 1580.

Court of Civil Appeals of Texas. Waco.
April 11, 1935.

Rehearing Denied May 16, 1935.

Geo. A. Titterington, of Dallas, and H. J. Cureton, of Meridian, for appellant.

W. V. Dunnam, of Waco, for appellee.

STANFORD, Special Chief Justice.

This suit was brought by Mrs. Minnie Lee Harrison, appellee herein, against John Hancock Mutual Life Insurance Company and E. L. Jarrett to restrain the sale of 423 acres of land in Bosque county by said Jarrett as trustee named in deed of trust given by Mrs. Minnie Lee Harrison to secure the payment of a note for the sum of $12,000, on the ground that the contract as evidenced by the note and deed of trust were tainted with usury.

The facts are these: On November 1, 1918, appellee, Mrs. Minnie Lee Harrison, executed to the Dallas Trust & Savings Bank a promissory note for $7,000, called "Bond," bearing interest at the rate of 6 per cent. from date per annum, payable annually, and 10 per cent. after maturity, due November 1, 1923. Said note and interest to accrue thereon were secured by a deed of trust with two acceleration clauses, the pertinent parts of which are as follows:

"If mortgagor fails to pay said bond with interest as same becomes due * * * then and in any such event, the said principal sum hereby secured, and all interest thereon to the date of payment thereof, shall, at the option of the holder of said bond, be and become immediately due and payable, anything in this mortgage or said 'bond' contained to the contrary notwithstanding. * * * *"

"It is hereby further specially agreed that if any of said 'bond' or any installment of interest * * * remain unpaid for five days after the same are due, * * * then at the option of the said Mortgagee, the whole indebtedness and all sums secured by this mortgage, to-wit: the principal and interest then accrued on said bond, and all advances * * * shall at once become due and payable."

Then, if sold under deed of trust, proceeds of said sale to be applied to payment of advertising and making the sale, payment of commission of 5 per cent., "to the payment of said bond, together with all interest there-

on," payment of taxes, assessments, and, lastly, hold remainder subject to order of mortgagor.

That on the same date, November 1, 1918, as a part of the same transaction, she executed to said Dallas Trust & Savings Bank five additional principal notes in the sum of $70 each, due on the 1st day of November of the years 1919, 1920, 1921, 1922, and 1923, and being for the sum of $350 in the aggregate; said notes providing for interest after maturity at the rate of 10 per cent. per annum. Also as a part of the same transaction she executed to said bank a "Second Deed of Trust" on said land to secure the five notes for $70 each. Said notes were intended to represent an additional 1 per cent. on the principal sum of $7,000 loaned to appellee by said bank. The second deed of trust, in part, provided:

"This mortgage is made subject to the first mortgage to the said Mortgagee, securing one note, hereinafter called 'Bond,' for $7,000.00, payable to said Mortgagee. Said notes hereinafter described and secured hereby being given for a part of the interest of a loan of $7,000.00, said 'bond' as evidenced and secured by said first mortgage of even date herewith, and the Mortgagee shall, by this instrument, have all the rights of subrogation secured by said first mortgage. The beneficiary or holder of the indebtedness hereby secured, shall have the option of taking over, or paying off any part of the indebtedness secured by said first mortgage. * * * *"

"It is, therefore, agreed that if the 'bond' secured by the said first mortgage be paid off and discharged according to the terms thereof, and the above described notes hereby secured are paid off according to their face, tenor and effect, then this conveyance shall be void and the lien hereby created shall be released at the cost of the Mortgagor; but if default should be made in the payment of the notes above described or of the 'bond', or any of them, secured by the first mortgage aforesaid, or if default should be made in the compliance with any of the terms or conditions of said first mortgage, which are hereby adopted and made a part of this instrument, then the whole sum of money hereby secured shall become due and payable, at the election of the holder thereof * * * and proceeds of said sale to be applied as follows: First, to the cost and expense of making said sale, including reasonable compensation to said mortgagee for services; second, to the payment and satis-

faction of said notes, and any other indebtedness hereby secured; third, to the payment and satisfaction of the 'bond' secured by the above mentioned first mortgage, or of any taxes, insurance or other sums due under the terms of said first mortgage, according to the conditions thereof; fourth, the balance, if any, to be paid to the Mortgagor,"

appellee's contention being that said instruments authorized the Dallas Trust & Savings Bank to exact and receive during or at the end of the first year of said loan, as interest for said indebtedness of $7,000, the sum of $420 as provided in said bond, and the further sum of $350, the aggregate of the five interest notes, or $770, for the use, forbearance, and detention of $7,000 for one year or even for a portion of one year.

Shortly prior to November 1, 1923, the date of maturity of the $7,000 bond, and after she had paid all interest notes save the last, as well as the interest on the bond, Mrs. Minnie Lee Harrison made a formal written application to John Hancock Mutual Life Insurance Company, appellant, for a loan of $12,000 for a term of ten years at the rate of 6½ per cent. interest, offering as security said 423 acres of land, in which application she stated that the $7,000 lien existed against same which was held by Dallas Trust & Savings Bank, and that the purpose for which she intended to use the money borrowed was "to extend the $7,000.00 note and pay $5,000.00 on another tract of land." Said application further authorized "said John Hancock Mutual Life Insurance Company to pay or extend any outstanding liens, judgments or taxes against the land from the proceeds of any loan that may be granted." Thereafter appellant, John Hancock Mutual Life Insurance Company, made the loan of $12,000, bearing interest at 6½ per cent., and a note for that amount and a deed of trust to secure the same were executed on the 9th day of October, 1923, by Mrs. Minnie Lee Harrison to Frank R. Robinson, trustee, upon said 423 acres of land, which note and deed of trust, in and of themselves, are legal and valid in form and are not usurious. In closing the $12,000 loan, the following payments were made by appellant: $7,000 on principal due Dallas Trust & Savings Bank; $492.50 interest to Dallas Trust & Savings Bank; $4,507.50 to Mrs. Harrison. These payments were made out of the $12,000 loan, after the loan papers were executed and recorded. The John Hancock Mutual Life Insurance Company had no negotiations with Dallas Trust & Savings Bank except to make the above payments and take from them an assignment or transfer of said $7,000 note.

The court, without the intervention of a jury, rendered judgment holding that the loan for $12,000 held against plaintiff was tainted with usury, and credited upon the principal all payments that had been made as interest, thus reducing the amount of defendant's loan to $3,150.51. John Hancock Mutual Life Insurance Company appealed.

■ Construing the several Dallas Trust & Savings Bank instruments as one contract, we think it clearly appears that said bank was authorized to exact more than 10 per cent. interest per annum, in violation of article 4979, Revised Civil Statutes 1911. The trial court correctly so held. Shropshire v. Commerce Farm Credit Co., 120 Tex. 400, 30 S.W.(2d) 282, 39 S.W.(2d) 11, 12 et seq., 84 A. L. R. 1269; Dallas Trust & Savings Bank v. Brashear (Tex. Com. App.) 65 S.W.(2d) 288, 290, and authorities there cited. The acceleration clauses in this and the Brashear Case are substantially the same and identical in part. As said in the Shropshire Case: "Here the parties have used clear and positive language to negative the abatement of any portion of the unearned interest secured by the second lien deed of trust."

■ But was the $12,000 note of the John Hancock Mutual Life Insurance Company, against which in itself there was no plea of usury, tainted with the vice of usury brought over from the Dallas Trust & Savings Bank notes? We do not think so. We are of the opinion that the acts and conduct of Mrs. Harrison through her formal written application to the Hancock Company, seeking the loan from them and initiating the transaction, and procuring it to pay off and take an extension of the $7,000 note, and also directing it to pay the $492.50 accrued interest, constituted a waiver of her right to now assert usury as to the Hancock note. The record shows beyond dispute that the Hancock Company's first contact with Mrs. Harrison and the Dallas Trust & Savings Bank notes was through her signed statement applying for the $12,000 loan, "to be secured by a first mortgage or trust deed" on the 423 acres of land. Among other representations in said application, she recited the encumbrance of $7,000 due November

1st to Dallas Trust & Savings Bank, that the purpose she intended to use the money borrowed was "to extend $7,000.00 note and pay $5,000.00 on another tract of land," and that she had applied to some one else for a loan and it was approved by them for $12,000, but "declined by me for cheaper rate of interest." Said application also "authorized John Hancock Mutual Life Insurance Company to pay or extend any outstanding liens, judgments or taxes against the land from the proceeds of any loan that may be granted." After the receipt of the application, the 423 acres offered as security was inspected, the $12,000 note and deed of trust dated October 9, 1923, executed, and thereafter appellant called on Dallas Trust & Savings Bank for a statement of amount due, and the payments as heretofore stated were made on November 1st. The record discloses a letter dated October 31, 1923, from Mrs. Harrison to appellant, authorizing them to pay to Dallas Trust & Savings Bank the $492.50, being the amount of interest due them on November 1st, together with transfer or release fee. On November 26th Dallas Trust & Savings Bank executed their release of the five second lien notes for $70 each and the assignment and transfer of the $7,000 note and deed of trust to appellant. Appellant's state representative who handled the loan testified that he relied exclusively upon the representations made in the application; that no notice came to them from any source from Mrs. Harrison with reference to a usurious claim, and that, if it had been mentioned in any way, he would not have made the loan. As said in 67 C. J. p. 295: "A waiver may be created by acts, conduct or declarations insufficient to create a technical estoppel." Mrs. Harrison, as well as the Hancock Company, was charged with notice that the original transaction between appellee and the Dallas Trust & Savings Bank was usurious and invalid as to interest. Prior to or at the time of the Hancock loan she could have asserted same, or she could choose to waive that privilege, personal to her, and pay it. The evidence is uncontradicted that she committed herself to the latter course, and she is precluded from asserting it now.

As said in the case of Palmetto Lumber Co. v. Gibbs (Tex. Civ. App.) 52 S.W.(2d) 120, 121, 122: "While our statutes outlaw usurious contracts, they do not inhibit the payment of usurious debts. The payment of such debts operates to discharge them in full, and the title to the money or property used as a medium of payment passes to the payee."

And in Krackau v. Abe B. Freeman (Tex. Civ. App.) 60 S.W.(2d) 853, 854, it is said: "The fact that one loans money to another, knowing at the time that the money loaned is to be used for an unlawful purpose, does not render the loan transaction illegal for, as was said by the Supreme Court, speaking through Judge Harvey of the Commission of Appeals, in Perkins v. Nevill, 58 S.W. (2d) 50, at page 52: 'It is fairly well recognized by our courts that even actual knowledge, on the part of the lender, that the borrower intends to put the borrowed money to an unlawful use, does not, of itself, invalidate the loan contract,'" citing numerous cases.

And because the Hancock Company made the payments for her and as authorized and directed by her, and took an assignment of the note, as is customary, would not alter the fact that it was her payment. The instant case is the same as if appellant had paid the money directly to appellee and she had herself with such funds paid off the Dallas Trust & Savings Bank loan. See Rhoads v. Bonner (Tex. Civ. App.) 49 S.W.(2d) 502.

As said in John Hancock Mutual Life Insurance Co. v. Houston (Tex. Civ. App.) 76 S.W.(2d) 176, 179, quoting from 66 C. J. 251, par. 207: "A loan made in good faith, and at a legal rate of interest, for the purpose of enabling the borrower to pay a debt owed to a third person is not affected by any usury that may inhere in said debt. This rule is none the less applicable when the maker of the new loan knows that the debt to be discharged is usurious, unless it is merely a colorable transaction to cover the original usury."

And as said in the concurring opinion of Mr. Justice Alexander, in Lincoln National Life Ins. Co. v. Anderson (Tex. Civ. App.) 71 S.W.(2d) 555, 560, 561: "If a third party, at the request of the debtor, takes up and pays off a usurious loan and takes a new note therefor from the debtor, his claim for the amount so advanced by him is valid even though he knew that the old debt paid off by him was usurious; and the mere fact that the new creditor took an assignment of the old debt in order to make sure that he was subrogated to the lien securing same would not alter the case, provided such new creditor, at the request of the debtor, actually advanced the amount of his claim and used the same in paying off the usurious debt."

The judgment of the trial court is reversed and the injunction dissolved, and judgment is here rendered for defendant for the principal amount of its debt, together with taxes paid by it, and interest, and attorney's fees, with foreclosure of its lien as prayed.