DODD et al. v. PHŒNIX MUT. LIFE INS. CO.

No. 3715.

Court of Civil Appeals of Texas. El Paso.
Sept. 29, 1938.

Rehearing Denied November 23, 1938.

Austin S. Dodd, of Dallas, for appellants.

E. A. Coker and Coker, Rhea & Vickrey, all of Dallas, for appellee.

NEALON, Chief Justice.

Phoenix Mutual Life Insurance Company, a corporation, instituted this suit to foreclose a deed of trust on certain land in Red River County. Defendants were the surviving makers of the bonds or notes declared upon and alleged to be secured by the deed of trust and the heirs of several deceased makers of said notes. Defendants pleaded usury and partial want of consideration. Upon an instructed verdict in favor of plaintiff personal judgment was rendered against appellants Henry C., Lillian, Serena and Kathleen Dodd, who were signers of said notes. Judgment of foreclosure was rendered against the interests of all defendants. This appeal of Henry C., Lillian, Serena and Kathleen Dodd is from said judgment.

The notes declared upon are numbered from one to five, inclusive. Notes numbered one, two, three and four are each in the principal sum of $250 and became due, respectively, on the 1st day of January of the years 1930, 1931, 1932 and 1933. Note number five is for $11,500 and due January 1, 1939. Each note bears interest at the rate of five and one half percent per annum from January 1, 1929. According to interest coupons attached the interest was due annually upon the 1st day of January. Each principal note and interest coupon was to bear interest at the rate of ten percent per annum from its maturity. The notes contained the usual attorney's fee clause and provided for acceleration of maturity at the option of the holder upon default in the payment of principal or interest and upon several other contingencies.

The basis of the plea of partial want of consideration is as follows: July 1, 1921, the makers of the notes declared on executed to the Commerce Farm Credit Company a deed of trust on said land (which deed of trust was a first lien and will be hereinafter referred to as "first deed of trust") to secure a loan of $12,500, the principal of which fell due January 1, 1929. The note bore interest at the rate of six

and one half percent per annum throughout the seven and one half years it was to run, the interest obligation being evidenced by eight attached interest coupons, each in the sum of $812.50, except the first, which was in the principal sum of $406.25.

Simultaneously with the execution of the notes for $12,500 and the deed of trust to secure the same, the makers of said notes executed and delivered to the Commerce Farm Credit Company three additional notes evidencing an obligation to pay interest, each of this second series of notes being in the sum of $625 and bearing interest at the rate of ten percentum per annum after maturity. These notes were due, respectively, upon the first day of January in the years 1922, 1923 and 1924. They were secured by what is herein referred to as the "second deed of trust."

The "first deed of trust" executed in 1921 provided that if the principal or any installment of interest should not be paid when due the entire indebtedness and charges secured thereby should become due and collectible at the option of the holder. The "second deed of trust" executed in 1921 by reference incorporated all of the terms, provisions, covenants and agreements contained in the first deed of trust except as expressly changed in the second instrument, and provided expressly that if the notes secured by the second deed of trust and each of them were not paid promptly when due, or in case of the breach of any of the covenants, terms or agreements contained in the first deed of trust, then all of said second lien notes should become due and payable at the election of the holder.

Shortly after the execution of the notes they were transferred by the Commerce Farm Credit Company to Commerce Trust Company, which retained the second lien notes, but transferred the first lien and all notes secured thereby to appellee by written assignment dated September 7, 1921, at the same time giving appellee its written obligation to advance to appellee an additional one half of one percent per annum above the six and one half percent interest provided in the note for $12,500, thereby making the investment net appellee seven percent per annum. All the interest coupons and what were styled the three "additional interest notes" executed in 1921 were paid to the Commerce Trust Company as they fell due. The Commerce Trust Company paid appellee the several amounts

represented by the interest coupons and the additional one half of one percent in keeping with its written obligation. The Commerce Trust Company issued its receipt for the money so received from appellee Henry C. Dodd and stamped the interest notes and coupons "paid" and returned them.

Prior to the maturity of the 1921 principal note and the last interest coupon attached thereto, Henry C. Dodd filed another application for loan addressed to Commerce Mortgage Company, but intended for and actually received by Commerce Farm Credit Company. The application stated the money to be borrowed was to be used for "renewal." Attached to the application was the lender's examiner's report which contained this notation: "This is a renewal of C F 17412—Dodd," which was the lender's description of the 1921 loan.

There was no controversy between appellee or its representatives or the Commerce Farm Credit Company and appellants, or any of them, at the time the 1928 application was made. The 1928 notes and deeds of trust were prepared by the Commerce Farm Credit Company, to which the notes were made payable. This Company transferred the notes and lien to Commerce Trust Company on December 31, 1928 and on January 30, 1929 the Commerce Trust Company transferred to appellee those declared on. By writing dated February 15, 1929, appellee transferred to Commerce Farm Credit Company the 1921 principal note and lien, the assignment reciting that the consideration was paid by the Commerce Trust Company for the Farm Credit Company.

At the time the 1928 notes were transferred to appellee the Commerce Trust Company and appellee had an agreement under the terms of which appellee had six months in which to make its own inspection and examination before taking the loan from the Commerce Trust Company, and the latter Company was obligated to relieve appellee of the loan if it did not measure up to appellee's required standard. In this case no objection was made by appellee to the loan. The Commerce Trust Company, in 1928, had an arrangement by which it rendered to appellee such services as looking after taxes, making collections and reporting conditions in the field. This arrangement had also existed as to the 1921 paper. The Commerce Trust

Company, upon occasion, when necessary called upon the Commerce Farm Credit Company to assist in collecting, and especially in making collections from delinquents.

Appellee specially pleaded that the Commerce Trust Company offered to sell the notes declared on and that appellee purchased same in due course; that it had nothing to do with the formulation of the papers and that its purchase of the 1928 notes was wholly unrelated to the 1921 notes. The undisputed testimony was that the Commerce Trust Company paid appellee the $12,500 due upon the 1921 principal note in New York Exchange dated January 31, 1921 to discharge the 1921 first lien. A deposit placed in the New York Chemical National Bank by appellee and credited to Commerce Trust Company was the purchase price of the 1928 first lien. The date of this deposit and credit was not shown, but it was about the time that the check from the Commerce Trust Company was received by appellee.

The deed of trust made in 1928 contained the following statement: "The bonds (notes) secured hereby are given for money advanced by Commerce Farm Credit Company, at our request, to pay off and discharge the balance of an indebtedness due against the land herein conveyed, evidenced by the balance of the principal and interest due on one note for the principal sum of $12,500, dated July 1st, 1921, due January 1st, 1929, made by Isabelle Dodd, a widow, Henry C. Dodd, a single man, * * *," etc.

Suit was filed December 5, 1928. Prior to the filing of suit plaintiff (appellee) had received $6,056.75 interest from the makers of the notes, and $468.25 from the Commerce Trust Company. Upon the notes executed in 1928 appellants and their associates had paid $250 on principal and $875.04 interest. At the time suit was brought defendants were in default as to interest payments due January 1, 1931, January 1, 1932 and January 1, 1933, except as to a payment of $187.04 made November 30, 1931. Upon account of these defaults plaintiff elected to mature the entire debt.

Appellants contended that the 1928 notes were merely renewals of the 1921 indebtedness, that the original transaction constituted a contract to pay usury and that therefore all interest payments should be credited to principal, leaving a balance of only $4,812.96 and putting the debt in good standing rather than in default.

After an instructed verdict in favor of plaintiff was returned, defendants filed and urged a motion for judgment in their favor non obstante veredicto. The motion was overruled, as was also defendants' motion for new trial.

### Opinion.

In their brief appellants do not attack the provisions of the 1928 deed of trust, notes and coupons. In fact, after discussing the provisions of the 1921 instruments, they say: "Most, if not all, of the objectionable features were eliminated in the draft of the 1928 instruments." We, therefore, need not consider the provisions of the instruments executed in 1928.

As will be noted from the preliminary statement a verdict was directed in favor of appellee. In none of their assignments of error nor in any of their propositions do appellants challenge this action of the court upon the theory that there was an issue of fact to be submitted to the jury. Upon the contrary, by their eleven propositions they, in effect if not expressly, urge only that the 1921 papers should be considered together with the 1928 papers upon the theory that the 1928 transactions represented a mere renewal of the 1921 debt; that by the 1928 transaction the alleged usury which they insist tainted the 1921 transaction was neither purged nor waived, nor did the 1928 transaction constitute a novation by which usury was eliminated; that appellee bought the original loan with notice of the defenses that might be and are urged against it, and that therefore all interest paid should be credited to principal, and that the court should have instructed a verdict favorable to their contentions.

To sustain the contention of appellants we must presume that the 1928 transaction was not what on its face it purports to be. Upon its face it purports to be a loan made by the Commerce Farm Credit Company to appellants and their associates for the purpose of satisfying the debt then owing to appellee. Such is the picture of the transaction reflected by the recitals of the 1928 deed of trust executed by appellants and associates, and if the use of the word "renewal" and accompanying notations in the application for this loan in any way contradicted this recital and the interpretation of the transaction urged by appellee, it was the function of the jury to determine the truth. The appellants

do not insist in their brief that there was such an issue of fact in the case. Therefore, if it was in the case and the court erred in ignoring it, the error has been waived.

 We must view the transaction, then, as it is depicted in the instruments executed and negotiations carried on in 1928. It is not alleged by plaintiffs that the transaction was merely a colorable one, nor that any fraud, accident or mistake induced appellants and their associates to enter into it in the form and manner in which it was accomplished. We therefore consider the facts as presented by the face of the record and apply the law to them as they thus appear. If in fact the 1921 contract was usurious, appellants had the right in 1928, or upon the maturity of the principal note, to demand that purported interest payments be applied to principal and the principal reduced accordingly. They also had the right to waive the alleged usury and pay the debt according to the face of the paper. If, as represented by the papers in evidence, they elected to request the Commerce Farm Credit Company to pay the principal debt to appellee, as stated in their obligation, without asking that it be reduced by the application of interest payments to principal, there was no usury in the negotiations with the Commerce Farm Credit Company in 1928. If in fact appellee had received payments which should, at the demand of appellants, have been applied to principal, but had received payment from the Commerce Farm Credit Company, acting for appellants, without either such demand having been made or such credit given, the Farm Credit Company was acting lawfully, and the obligation and security therefor that it received from appellants was not tainted with usury. The sale of the obligation to appellee would not change its character. The vice of usury, if it exists at all, must be present in the contract at its inception. Federal Mortgage Company v. Davis, Tex. Civ.App., 100 S.W.2d 717; Davis v. Federal Mortgage Company, Tex.Sup., 111 S. W.2d 1066; Ustick v. Jones et al., 130 Tex. 620, 112 S.W.2d 703, 706; Krause v. Pope, 78 Tex. 478, 14 S.W. 616; Cousins v. Grey, 60 Tex. 346.

The fact, if it was a fact, that the money loaned was to pay a debt tainted with usury, would not so taint the note for the money so loaned. Perkins v. Nevill, Tex.

Com.App., 58 S.W.2d 50; John Hancock Mutual Life Ins. Co. v. Houston, Tex.Civ. App., 76 S.W.2d 176, 179; John Hancock Mutual Life Ins. Co. v. Harrison, Tex.Civ. App., 82 S.W.2d 1075.

Upon its face the transaction is one in which the Commerce Farm Credit Company paid the money evidenced by the original note to appellee at the instance of appellants, and so far as the issues of this case are concerned is not different from the situation that would have existed had the Commerce Farm Credit Company delivered the money to appellants and had they in turn personally paid it to appellee. John Hancock Mutual Life Ins. Co. v. Harrison, Tex.Civ.App., 82 S.W.2d 1075, 1078. The penalty exacted of a creditor for entering into a contract which might at the creditor's option in certain contingencies result in the payment of usury, or in purchasing the debt evidenced by such a contract, does not thereafter disqualify the same creditor from purchasing another obligation of the same debtor secured by the same property. The penalties attaching to the making of a contract of this character may not be extended by the courts beyond the limits fixed by statute; and the statute (R.C.S., 1925, Articles 5071 and 5073) does not disqualify creditor and debtor from entering into relations of the character suggested.

We are not at liberty, in the state of the pleadings and evidence presented, to ignore the language of the instruments declared upon or their purport and hold that their actual meaning is the contrary of that expressed.

Mr. Henry C. Dodd, who represented his associates in making the loan sued upon, knew at the time he made the loan that appellee or other holder of the paper had not collected more than the maximum permitted rate of interest. He did not insist that he should be relieved of the payment of interest because of the provisions of the original contract now complained of. As stated, he and the other appellants recited in their deed of trust that they were borrowing the money to pay the prior indebtedness. To adopt appellants' theory that the court is bound as a matter of law to treat this merely as the renewal of an old loan and not as the making of a new one would demand, also, that we ignore the contract which gave appellee six months within which to require that it be relieved of the paper and reimbursed in the event the loan

684

was not satisfactory according to appellee's standards. This course the court would not be justified in taking.

Appellants' assignments of error are overruled. The judgment of the trial court is affirmed.

Affirmed.